UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AKAKI BUTSKHRIKIDZE, ALEKSANDRE CHINCHALADZE, SERGO GELASHVILI, GIORGI GIGATADZE, GOGA GIGAURI, GIORGI LIPARTIA, GIORGI NINIDZE, TAMAZ SABAURI, BESIK TSIKHELISHVILI, AND KHADURI ZVAIDI *individually and on behalf of all others similarly situated,* | Case No.: |
| | **COMPLAINT** |
| | **COLLECTIVE AND CLASS ACTION** |
| Plaintiff(s), | |
| -against- | |
| CE SOLUTIONS GROUP, LLC, NYC 2WAY INTERNATIONAL LTD, UNIQUE TRANS CORP., A&M TRANSPORT TRANSPORT INC, BEKRUZJON INC., BEKRUZJON CORP, EDUARD SLININ, individually, DORA SLININ, individually, JEANNINE NAPOLEONE-COLBERT, individually, NABIH KOUBAISSY, individually, MAHMOUD BEHEIRY, individually and MADINA SHUKUROVA, individually, , | |
| Defendants, | |

Plaintiffs AKAKI BUTSKHRIKIDZE, ALEKSANDRE CHINCHALADZE, SERGO

GELASHVILI, GOGA GIGAURI, GIORGI GIGATADZE, GIORGI LIPARTIA, GIORGI

NINIDZE, TAMAZ SABAURI, , BESIK TSIKHELISHVILI,  AND KHADURI ZVAIDI,

individually and on behalf of all others similarly situated, by their attorneys, upon personal

knowledge as to themselves and upon information and belief as to all other matters, complain of

Defendants, CE SOLUTIONS GROUP, LLC; NYC 2WAY INTERNATIONAL LTD; UNIQUE

TRANS CORP.; A&M TRANSPORT TRANSPORT INC (*sic*); BEKRUZJON INC.;

BEKRUZJON CORP; EDUARD SLININ individually; DORA SLININ, individually; JEANNINE

NAPOLEONE-COLBERT, individually; NABIH KOUBAISSY, individually; MAHMOUD

BEHEIRY, individually; and MADINA SHUKUROVA, individually (collectively "Defendants")

alleging:

## 1.  NATURE OF THE ACTION

1.      Plaintiffs bring this civil action seeking damages and equitable relief for the

Defendants' willful violations of the Plaintiffs' rights under: **(i)** the overtime provisions of the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); **(ii)** the overtime provisions of the New York

Labor Law ("NYLL"), including NYLL § 160 and N.Y. Comp. Codes R. & Regs. ("NYCCRR") tit.

12, § 142-2.2; **(iii)** the minimum wage provisions of the NYLL, including NYLL §§ 198, 652, and 12

NYCRR § 142-2.1; **(iv)** the NYLL's requirement that employees receive one hour's pay at the

minimum wage rate for any day in which the spread of hours exceeds ten, NYLL §§ 652, 198, 12

NYCRR § 142-2.4; **(v)** the NYLL's requirement that employers furnish employees with wage

statements containing specific categories of accurate information on each payday, NYLL § 195(3); **(vi)**

the NYLL's requirement that employers furnish employees with a wage notice at hire containing

specific categories of accurate information, NYLL § 195(1); **(vii)** the NYLL's ban on deductions from

employee's wages, NYLL § 193; (**viii**) retaliation claims under FLSA, 29 U.S.C. § 215, and NYLL §

215; **(ix)** misclassification under the Construction Industry Fair Play Act, NYLL §861 et seq.; **(x)**

construction industry wage theft under NYLL §198-E; **(xi)** violation of the N.Y.C. Admin. Code §

20-929, the "Freelance Isn't Free Act"; **(xii)** unjust enrichment under the common law; and **(xiii)** any

other claims inferred from the facts herein.

## 2.  PRELIMINARY STATEMENT

2.      Defendant CE SOLUTIONS GROUP, LLC is a New York limited liability company

engaged in the business of providing services assisting non-party Consolidated Edison Company of

New York, Inc. ("ConEd"), by staffing ConEd construction worksites.

3.      CE SOLUTIONS GROUP, LLC staffs these ConEd construction worksites with certain non-exempt and non-managerial workers who CE SOLUTIONS GROUP, LLC requires to remain at ConEd constructions sites around the clock throughout the project ("Workers" or "Plaintiffs").

4.      CE SOLUTIONS GROUP, LLC requires the Workers to remain at the sites around the clock in their roles as a) Spotters to ensure that no individuals will park their car such that it interferes with the work ConEd needs accomplished ("Spotters"); and b) Flaggers to ensure that a worker will always be available to stop on-coming cars so that traffic will not interfere with the work ConEd needs accomplished ("Flaggers").

5.      Certain Workers also had shifts as Supervisors to review workers, facilitate communication and interaction between CE SOLUTIONS GROUP, LLC and the Workers due to language barriers and who were also responsible for distributing wages received from Defendants ("Supervisors"). These were shifts in addition to those worked as Spotters and Flaggers as described above.

6.      CE SOLUTIONS GROUP, LLC requires Workers to take and send in photographs of themselves every hour at the job site to prove their whereabouts, similar to a house arrest arrangement. If photographs are not submitted, hours will not be paid. Workers were not allowed to leave the site, absent permission, and slept in cars there, leading to shifts of 24-hours in a row that would often stretch up to seven days in a week.

7.      CE SOLUTIONS GROUP, LLC regularly "deducts" time from the hours of Workers without evidence such deduction was warranted, for arbitrary reasons, and often months after the fact, including refusing to pay for completed jobs, claiming some minor mistake prevented any payments being made.

8.      Defendants NYC 2WAY INTERNATIONAL LTD, UNIQUE TRANS CORP., A&M TRANSPORT TRANSPORT INC, BEKRUZJON INC., and BEKRUZJON CORP are corporate entities that are nominally owned by various individuals but which, in reality, function as subsidiaries and/or agents of CE SOLUTIONS GROUP, LLC and Defendants EDUARD SLININ and DORA SLININ ("SLININS"), and for which CE SOLUTIONS GROUP, LLC and SLININS are liable for any wage violations as their employer and pursuant to: the New York Construction Industry Fair Play Act, the Construction Worker Wage Theft Act.

9.      Defendants EDUARD SLININ and DORA SLININ are owners, operators and managers of CE SOLUTIONS GROUP, LLC and set the company's payroll policies, including the unlawful practices complained of herein.

10.     Throughout the entirety of the Workers employment, Defendants have willfully failed to pay Plaintiffs the wages lawfully due to them under the FLSA and the NYLL. Specifically, for the entirety of their employment, Defendants have required Plaintiffs to work, and Plaintiffs did in fact work, well in excess of forty hours during virtually every workweek of their employment. In a scheme to avoid paying all wages and premiums due, Defendants willfully misclassified Plaintiffs as independent contractors in direct violation of CIFPA, the FLSA, and the NYLL. Based thereupon, Defendants refused to pay Plaintiffs any overtime compensation for any of their hours worked beyond forty in a week in violation of the FLSA and the NYLL. Instead, Defendants paid Plaintiffs at their stated rates of pay for all hours worked.

11.     Furthermore, Defendants violated the NYLL by failing to provide Plaintiffs with at least the New York statutory minimum wage for all hours worked; an additional one hour's pay at the New York minimum wage rate for all days when Plaintiffs' workdays exceeded ten hours from start to finish in violation of the NYLL and NYCRR's spread-of-hours provision, NYCRR § 142-2.4; accurate wage statements on each payday that included, inter alia, their actual hours worked and/or

their overtime rates of pay, in violation of NYLL § 195(1); and with any wage notice upon hire, let alone an accurate one, in violation of NYLL § 195(1).

12.    Plaintiffs therefore bring this lawsuit against Defendants pursuant to the collective action provisions of the FLSA, 29 U.S.C. § 216(b), on behalf of themselves, individually, and on behalf of all other persons similarly situated during the applicable FLSA limitations period who suffered damages as a result of the Defendants' willful violations of the FLSA.

Plaintiffs assert their claims under the NYLL and NYCRR on behalf of themselves and any FLSA Plaintiffs who opt-into this action pursuant to the provisions of Fed. R. Civ. P. 23.

## 3.  JURISDICTION AND VENUE

13.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, et seq. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

14.    Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) and/or (b)(2), as one or more of the Defendants reside within this judicial district, and as a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

15.    On March 20, 2020, then-New York Governor Andrew M. Cuomo signed Executive Order 202.8, which suspended "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under New York State laws or court procedural rules for thirty (30) days. This suspension period began on March 20, 2020, and was extended through subsequent executive orders, including 202.14, 202.28, 202.38, 202.48, 202.55, 202.60, and 202.67, lasting until November 3, 2020. In total, these Executive Orders provided for a suspension period of two hundred and twenty-eight (228) days.

16.    In addition, on May 21, 2021, a putative class action under the NYLL was filed in Supreme Court, New York County, against, inter alia, Defendants CE SOLUTIONS GROUP, LLC,

EDUARD SLININ, and DORA SLININ. The action, *Richardson v. CE SOLUTIONS GROUP, LLC, et al.*, Index No. 653369/2021, alleging, *inter alia*, claims under the NYLL for unpaid overtime, unpaid minimum wages, unpaid spread-of-hours pay, and failure to provide wage statements and wage notices, thereby tolling the statute of limitations for all putative class members—including all Plaintiffs and putative FLSA Plaintiffs—for these claims as of May 21, 2021.

17. Plaintiffs affirmatively opt-out of any pending putative class actions and elect to pursue their NYLL claims contemporaneously with their FLSA claims asserted herein.

## 4. PARTIES

18. Throughout the relevant period, each Plaintiff was employed by one or more Defendant in New York and each Plaintiff qualified as an 'employee' entitled to protections under the FLSA, NYLL, and NYCRR.

### 4.1. Plaintiffs

#### 4.1.1. Plaintiff AKAKI BUTSKHRIKIDZE

19. Plaintiff AKAKI BUTSKHRIKIDZE is a resident of Brooklyn, NY.

20. Plaintiff AKAKI BUTSKHRIKIDZE was employed by each Defendant from approximately May 2022 to approximately April 22, 2024.

21. Plaintiff AKAKI BUTSKHRIKIDZE worked as a Flagger, Spotter, and Supervisor performing manual labor for each Defendant.

#### 4.1.2. Plaintiff ALEKSANDRE CHINCHALADZE

22. Plaintiff ALEKSANDRE CHINCHALADZE is a resident of Brooklyn, NY.

23. Plaintiff ALEKSANDRE CHINCHALADZE was employed by each Defendant from approximately September 15, 2022 to present

24. Plaintiff ALEKSANDRE CHINCHALADZE worked as a Flagger and Spotter performing manual labor for each Defendant.

### 4.1.3. **Plaintiff SERGO GELASHVILI**

25.     Plaintiff SERGO GELASHVILI is a resident of Brooklyn, NY.

26.     Plaintiff SERGO GELASHVILI  was employed by each Defendant starting on approximately April 2023 to approximately March 2024.

27.     Plaintiff SERGO GELASHVILI worked as a Spotter performing manual labor for each Defendant.

### 4.1.4. **Plaintiff GOGA GIGAURI**

28.     Plaintiff GOGA GIGAURI is a resident of Philadelphia, PA.

29.     Plaintiff GOGA GIGAURI  was employed by each Defendant starting on approximately April 2023 to approximately November 2023.

30.     Plaintiff GOGA GIGAURI worked as a Spotter, performing manual labor for each Defendant.

### 4.1.5. **Plaintiff GIORGI GIGATADZE**

31.     Plaintiff GIORGI GIGATADZE is a resident of Staten Island, NY.

32.     Plaintiff GIORGI GIGATADZE was employed by each Defendant from approximately October 2022 to approximately February 2024.

33.     Plaintiff GIORGI GIGATADZE worked as a Flagger, Spotter, and Supervisor performing manual labor for each Defendant.

### 4.1.6. **Plaintiff GIORGI LIPARTIA**

34.     Plaintiff GIORGI LIPARTIA is a resident of Brooklyn, NY.

35.     Plaintiff GIORGI LIPARTIA was employed by each Defendant starting on March 2024 until approximately May 2024.

36.     Plaintiff GIORGI LIPARTIA worked as a Spotter performing manual labor for each Defendant.

### 4.1.7. **Plaintiff GIORGI NINIDZE**

37.    Plaintiff GIORGI NINIDZE is a resident of Philadelphia, PA

38.    Plaintiff GIORGI NINIDZE was employed by each Defendant starting on approximately May 2023 to approximately September 2023.

39.    Plaintiff GIORGI NINIDZE worked as a Spotter performing manual labor for each Defendant.

### 4.1.8. **Plaintiff TAMAZ SABAURI**

40.    Plaintiff TAMAZ SABAURI is a resident of Brooklyn, NY.

41.    Plaintiff TAMAZ SABAURI was employed by each Defendant starting on approximately April 2023 to approximately January 2024.

42.    Plaintiff TAMAZ SABAURI worked as a Spotter performing manual labor for each Defendant.

### 4.1.9. **Plaintiff GIORGI SURMANIDZE**

43.    Plaintiff GIORGI SURMANIDZE is a resident of Brooklyn, NY.

44.    Plaintiff GIORGI SURMANIDZE was employed by each Defendant starting on approximately May 2023 to approximately February 1, 2024.

45.    Plaintiff GIORGI SURMANIDZE worked as a Spotter performing manual labor for each Defendant.

### 4.1.10. **Plaintiff BESIK TSIKHELISHVILI**

46.    Plaintiff BESIK TSIKHELISHVILI is a resident of Brooklyn, NY.

47.    Plaintiff BESIK TSIKHELISHVILI was employed by each Defendant starting on approximately September 1, 2023 to approximately April 2024.

48.    Plaintiff BESIK TSIKHELISHVILI worked as a Spotter performing manual labor for each Defendant.

### 4.1.11. **Plaintiff KHADURI ZVAIDI**

49.     Plaintiff KHADURI ZVAIDI I is a resident of Brooklyn, NY.

50.     Plaintiff KHADURI ZVAIDI  was employed by each Defendant from approximately August 2023 to approximately May 2024.

51.     Plaintiff KHADURI ZVAIDI  worked as a Flagger and Spotter performing manual labor for each Defendant.

### 4.2. **Defendants**

### 4.2.1. **Defendant CE SOLUTIONS GROUP, LLC**

52.     Defendant CE SOLUTIONS GROUP, LLC is a Domestic Limited Liability Company organized under the laws of New York, with its principal place of business at 259 Columbia Street, Brooklyn, NY 11231.

53.     The Registered agent of service of Defendant CE SOLUTIONS GROUP, LLC is TUCH & COHEN LLP at 1025 OLD COUNTRY ROAD, SUITE 411, WESTBURY, NY, UNITED STATES, 11590.

54.     Defendant CE SOLUTIONS GROUP, LLC exercised control over the employment terms and conditions of each Plaintiff, each member of the FLSA Collective, and each Class Member. Defendant CE SOLUTIONS GROUP, LLC had and exercised the power and authority to (and also delegates to managers and supervisors the power to) hire and fire, determine rate and method of pay, supervised, determine work schedules, maintained payroll records, and otherwise affect the quality of employment of each Plaintiff, each member of the FLSA Collective, and each Class Member.

55.     At all relevant times, Defendant CE SOLUTIONS GROUP, LLC had and exercised functional control over the business, financial, and employment operations of the above Corporate Defendants and ensured that the business is operating efficiently and profitably.

56. At all relevant times Defendants EDUARD SLININ and Dora SLININ are owners, operators and managers of CE SOLUTIONS GROUP, LLC and set the company's payroll policies, including the unlawful practices complained of herein. They are personally enriched by the unlawful practices complained of herein.

57. CE SOLUTIONS GROUP, LLC had an annual gross volume of sales exceeding $500,000 in each of the three years preceding the filing of this Complaint.

58. CE SOLUTIONS GROUP, LLC has been engaged in interstate commerce within the meaning of the FLSA. This engagement includes routine work on public roadways connected to or part of interstate highways, the use of equipment and materials originating from states other than New York, and work assignments outside of New York state, thereby subjecting CE SOLUTIONS GROUP, LLC to the FLSA's overtime requirements as an enterprise.

### 4.2.2. **Defendant NYC 2WAY INTERNATIONAL LTD**

59. Defendant NYC 2WAY INTERNATIONAL LTD is a business corporation organized under the laws of New York, with its principal place of business at 241 37th Street Suite 1-4-B460, Brooklyn, NY, 11232..

60. The Chief Executive Officer, owner, or manager of Defendant NYC 2WAY INTERNATIONAL LTD is Defendant EDUARD SLININ.

61. The principal executive office address of Defendant NYC 2WAY INTERNATIONAL LTD is 241 37th Street Suite 1-4-B460, Brooklyn, NY, 11232.

62. The Registered agent of service of Defendant NYC 2WAY INTERNATIONAL LTD is TUCH AND COHEN LLP, with an address at 1025 Old Country Road, Westbury, NY, 11590.

63. Defendant NYC 2WAY INTERNATIONAL LTD exercised control over the employment terms and conditions of each Plaintiff, each member of the FLSA Collective, and each Class Member. Defendant NYC 2WAY INTERNATIONAL LTD had and exercised the power and

authority to (and also delegates to managers and supervisors the power to) hire and fire, determine rate and method of pay, supervised, determine work schedules, maintained payroll records, and otherwise affect the quality of employment of each Plaintiff, each member of the FLSA Collective, and each Class Member.

64.    At all relevant times, Defendant NYC 2WAY INTERNATIONAL LTD had and exercised functional control over the business, financial, and employment operations of the above Corporate Defendants and ensured that the business is operating efficiently and profitably.

65.    NYC 2WAY INTERNATIONAL LTD had an annual gross volume of sales exceeding $500,000 in each of the three years preceding the filing of this Complaint.

66.    NYC 2WAY INTERNATIONAL LTD has been engaged in interstate commerce within the meaning of the FLSA. This engagement includes routine work on public roadways connected to or part of interstate highways, and the use of equipment and materials originating from states other than New York, and work assignments outside the state of New York, thereby subjecting NYC 2WAY INTERNATIONAL LTD to the FLSA's overtime requirements as an enterprise.

### 4.2.3. Defendant UNIQUE TRANS CORP d/b/a A&M TRANSPORTATION

67.    Defendant UNIQUE TRANS CORP d/b/a A&M TRANSPORTATION is a business corporation organized under the laws of the state of New York with a principal place of business at 3007 43rd Street, Astoria, New York 11103.

68.    Throughout the relevant period, Defendants NABIH KOUBAISY and MAHMOUD BEHEIRY have acted as owners, operators, and managers of UNIQUE TRANS CORP d/b/a A&M TRANSPORTATION, directly responsible for establishing the company's payroll policies, including the practices alleged to be unlawful in this complaint.

69.    Defendant MAHMOUD BEHEIRY is or holds himself out to be the chief executive officer of Defendant UNIQUE TRANS CORP d/b/a A&M TRANSPORTATION

70.     Defendant UNIQUE TRANS CORP d/b/a A&M TRANSPORTATION exercised control over the employment terms and conditions of each Plaintiff, each member of the FLSA Collective, and each Class Member. Defendant UNIQUE TRANS CORP d/b/a A&M TRANSPORTATION had and exercised the power and authority to (and also delegates to managers and supervisors the power to) hire and fire, determine rate and method of pay, supervised, determine work schedules, maintained payroll records, and otherwise affect the quality of employment of each Plaintiff, each member of the FLSA Collective, and each Class Member.

71.     At all relevant times, Defendant UNIQUE TRANS CORP d/b/a A&M TRANSPORTATION had and exercised functional control over the business, financial, and employment operations of the above Corporate Defendants and ensured that the business is operating efficiently and profitably.

72.     Defendant UNIQUE TRANS CORP d/b/a A&M TRANSPORTATION had an annual gross volume of sales exceeding $500,000 in each of the three years preceding the filing of this Complaint.

73.     Defendant UNIQUE TRANS CORP d/b/a A&M TRANSPORTATION has been engaged in interstate commerce within the meaning of the FLSA. This engagement includes routine work on public roadways connected to or part of interstate highways, work assignments outside of New York state, and the use of equipment and materials originating from states other than New York, thereby subjecting UNIQUE TRANS CORP d/b/a A&M TRANSPORTATION to the FLSA's overtime requirements as an enterprise.

### 4.2.4. **Defendant A&M TRANSPORT TRANSPORT INC.**

74.     Defendant A&M TRANSPORT TRANSPORT INC is a business corporation organized under the laws of the state of New York with a principal place of business at 3007 43rd Street, Astoria, New York 11103.

75.     Throughout the relevant period, Defendants NABIH KOUBAISY and MADINA SHUKUROVA have acted as owners, operators, and managers of A&M TRANSPORT TRANSPORT INC, directly responsible for establishing the company's payroll policies, including the practices alleged to be unlawful in this complaint.

76.     Defendant A&M TRANSPORT TRANSPORT INC exercised control over the employment terms and conditions of each Plaintiff, each member of the FLSA Collective, and each Class Member. Defendant A&M TRANSPORT TRANSPORT INC had and exercised the power and authority to (and also delegates to managers and supervisors the power to) hire and fire, determine rate and method of pay, supervised, determine work schedules, maintained payroll records, and otherwise affect the quality of employment of each Plaintiff, each member of the FLSA Collective, and each Class Member.

77.     At all relevant times, Defendant A&M TRANSPORT TRANSPORT INC had and exercised functional control over the business, financial, and employment operations of the above Corporate Defendants and ensured that the business is operating efficiently and profitably.

78.     Defendant A&M TRANSPORT TRANSPORT INC had an annual gross volume of sales exceeding $500,000 in each of the three years preceding the filing of this Complaint.

79.     Defendant A&M TRANSPORT TRANSPORT INC has been engaged in interstate commerce within the meaning of the FLSA. This engagement includes routine work on public roadways connected to or part of interstate highways, work assignments outside of New York state, and the use of equipment and materials originating from states other than New York, thereby subjecting A&M TRANSPORT TRANSPORT INC to the FLSA's overtime requirements as an enterprise.

### 4.2.5. **Defendant BEKRUZJON INC**

80.     Defendant BEKRUZJON INC is a business corporation organized under the laws of New York, with its principal place of business at  1514 W 11th St Apt B5 Brooklyn, NY 11204.

81.     The Chief Executive Officer, owner, or manager of Defendant BEKRUZJON INC is Defendant MADINA SHUKUROVA .

82.     The principal executive office address of Defendant BEKRUZJON INC is 1514 W 11th St Apt B5 Brooklyn, NY 11204.

83.     The Registered agent of service of Defendant BEKRUZJON INC is BEKRUZJON INC at 1514 W 11th St Apt B5 Brooklyn, NY 11204.

84.     Defendant BEKRUZJON INC exercised control over the employment terms and conditions of each Plaintiff, each member of the FLSA Collective, and each Class Member. Defendant BEKRUZJON INC had and exercised the power and authority to (and also delegates to managers and supervisors the power to) hire and fire, determine rate and method of pay, supervised, determine work schedules, maintained payroll records, and otherwise affect the quality of employment of each Plaintiff, each member of the FLSA Collective, and each Class Member.

85.     At all relevant times, Defendant BEKRUZJON INC had and exercised functional control over the business, financial, and employment operations of the above Corporate Defendants and ensured that the business is operating efficiently and profitably.

### 4.2.6. **Defendant BEKRUZJON CORP**

86.     Defendant BEKRUZJON CORP is a business corporation organized under the laws of New York, with its principal place of business at 3007 43rd Street, Astoria, New York 11103.

87.     The principal executive office address of Defendant BEKRUZJON CORP is 3007 43rd Street, Astoria, New York 11103.

88.    Nodira Shukurova, at 3007 43RD STREET, ASTORIA, NY, UNITED STATES, 11103, has been designated by BEKRUZJON CORP. as the individual to whom the Secretary of State of New York shall mail a copy of any process against the corporation that is served upon the Secretary of State.

89.    Defendant BEKRUZJON CORP exercised control over the employment terms and conditions of each Plaintiff, each member of the FLSA Collective, and each Class Member. Defendant BEKRUZJON CORP had and exercised the power and authority to (and also delegates to managers and supervisors the power to) hire and fire, determine rate and method of pay, supervised, determine work schedules, maintained payroll records, and otherwise affect the quality of employment of each Plaintiff, each member of the FLSA Collective, and each Class Member.

90.    At all relevant times, Defendant BEKRUZJON CORP had and exercised functional control over the business, financial, and employment operations of the above Corporate Defendants and ensured that the business is operating efficiently and profitably.

**4.2.7. Defendant EDUARD SLININ**

91.    Defendant EDUARD SLININ is the owner, operator, and manager  of CE SOLUTIONS GROUP, LLC .

92.    Defendant EDUARD SLININ exercised complete control over the employment terms and conditions of each Plaintiff, each member of the FLSA Collective, and each Class Member.

93.    Workers regularly referred to EDUARD SLININ as "Eddy," which was how he was discussed at the job sites. Defendants JEANNINE NAPOLEONE-COLBERT, NABIH KOUBAISSY, MAHMOUD BEHEIRY, MADINA SHUKUROVA would refer to the boss as "Eddy", despite his never appearing at the job sites.

94.    Defendant EDUARD SLININ had and exercised the power and authority to and also delegates to the other Defendants, the power to: hire and fire, determine rate and method of pay,

supervised, determine work schedules, maintained payroll records, and otherwise affect the quality of employment of each Plaintiff, each member of the FLSA Collective, and each Class Member.

95.    At all relevant times, Defendant EDUARD SLININ had and exercised functional control over the business, financial, and employment operations of the above Corporate Defendants and ensured that the business is operating efficiently and profitably.

### 4.2.8. Defendant DORA SLININ

96.    Defendant DORA SLININ owns and/or manages and operates Defendant CE SOLUTIONS GROUP, LLC.

97.    Defendant DORA SLININ maintained payroll records such as timesheets for Flaggers and Spotters.

98.    Defendant DORA SLININ exercised control over the employment terms and conditions of each Plaintiff, each member of the FLSA Collective, and each Class Member.

99.    Defendant DORA SLININ had and exercised the power and authority to (and also delegates to managers and supervisors the power to) determines rate and method of pay, maintained payroll records, and otherwise affect the quality of employment of each Plaintiff, each member of the FLSA Collective, and each Class Member.

100.    At all relevant times, Defendant DORA SLININ had and exercised functional control over the business, financial, and employment operations of the above Corporate Defendants and ensured that the business is operating efficiently and profitably.

### 4.2.9. Defendant JEANNINE NAPOLEONE-COLBERT

101.    Defendant JEANNINE NAPOLEONE-COLBERT manages and operates CE SOLUTIONS GROUP, LLC.

102.    Defendant JEANNINE NAPOLEONE-COLBERT exercised control over the employment terms and conditions of each Plaintiff, each member of the FLSA Collective, and each

Class Member. Defendant JEANNINE NAPOLEONE-COLBERT had and exercised the power and authority to (and also delegates to Defendants the power to: supervise, determine work schedules, and otherwise affect the quality of employment of each Plaintiff, each member of the FLSA Collective, and each Class Member. At all relevant times, Defendant JEANNINE NAPOLEONE-COLBERT had and exercised functional control over the employment operations of the above Corporate Defendants and ensured that the business is operating efficiently and profitably.

103.    Defendant JEANNINE NAPOLEONE-COLBERT would regularly yell at "vendors" which was the term for the different corporate entities organized by CE SOLUTIONS GROUP, LLC to manage their workers. The Defendant corporations are an example of a "vendor" despite their having no meaningful existence separate from CE SOLUTIONS GROUP, LLC.

### 4.2.10. **Defendant NABIH KOUBAISSY**

104.    Defendant NABIH KOUBAISSY (a/k/a "Nabil Simba") acts as an owner and manager of Defendant UNIQUE TRANS CORP d/b/a A&M TRANSPORTATION

105.    Defendant NABIH KOUBAISSY exercised control over the employment terms and conditions of each Plaintiff, each member of the FLSA Collective, and each Class Member. Defendant NABIH KOUBAISSY had and exercised the power and authority to (and also delegates to managers the power to: hire and fire, determine rate and method of pay, supervised, determine work schedules, maintained payroll records, and otherwise affect the quality of employment of each Plaintiff, each member of the FLSA Collective, and each Class Member. At all relevant times, Defendant NABIH KOUBAISSY had and exercised functional control over the business, financial, and employment operations of the above Corporate Defendants and ensured that the business is operating efficiently and profitably.

### 4.2.11. Defendant MAHMOUD BEHEIRY

106.    Defendant MAHMOUD BEHEIRY acts as an owner, CEO and manager of Defendant UNIQUE TRANS CORP d/b/a A&M TRANSPORTATION.

107.    Defendant MAHMOUD BEHEIRY exercised control over the employment terms and conditions of each Plaintiff, each member of the FLSA Collective, and each Class Member. Defendant NABIH KOUBAISSY  had and exercised the power and authority to (and also delegates to managers and supervisors the power to) hire and fire, determine rate and method of pay, supervised, determine work schedules, maintained payroll records, and otherwise affect the quality of employment of each Plaintiff, each member of the FLSA Collective, and each Class Member. At all relevant times, Defendant MAHMOUD BEHEIRY had and exercised functional control over the business, financial, and employment operations of the above Corporate Defendants and ensured that the business is operating efficiently and profitably.

### 4.2.12. Defendant MADINA SHUKUROVA

108.    Defendant MADINA SHUKUROVA (aka DINA) acts as an owner and manager of Defendant BEKRUZJON INC..

109.    Defendant MADINA SHUKUROVA exercised control over the employment terms and conditions of each Plaintiff, each member of the FLSA Collective, and each Class Member. Defendant MADINA SHUKUROVA had and exercised the power and authority to (and also delegates to managers the power to: hire and fire, determine rate and method of pay, supervised, determine work schedules, maintained payroll records, and otherwise affect the quality of employment of each Plaintiff, each member of the FLSA Collective, and each Class Member. At all relevant times, Defendant MADINA SHUKUROVA had and exercised functional control over the business, financial, and employment operations of the above Corporate Defendants and ensured that the business is operating efficiently and profitably.

**5. COMMON FACTUAL ALLEGATIONS**

  5.1. **Defendants' Enterprise**

110.    Defendants are a group of closely affiliated entities and individuals which constitute joint employers. Defendants have an interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control.

111.    CE SOLUTIONS GROUP, LLC provides flagging and other related services for ConEd.

112.    Specifically, CE SOLUTIONS GROUP, LLC entered into one or more Blanket Purchase Agreements with ConEd for traffic control flagging services.

113.    CE SOLUTIONS GROUP, LLC engaged the other Corporate and Individual Defendants to provide staff logistics for its various flagging and spotting jobs for ConEd.

114.    The Corporate Defendants were, at all times relevant herein, a single integrated enterprise and a single integrated enterprise and joint employer of each of the Plaintiffs, with CE SOLUTIONS GROUP, LLC forming the central "hub" of the unlawful enterprise's wheel, and with each of the other Corporate Defendants and the associated Individual Defendants operating as the "spokes" off that hub.

115.    Specifically, each of the Corporate Defendants have, and had, an interrelation of operations in providing flagging and spotting services for ConEd with one another. Each of the Corporate Defendants concurrently control labor relations between employees and management and CE SOLUTIONS GROUP, LLC would direct the other Corporate Defendants to staff and supervise the ConEd Construction Work job sites with Spotters, Flaggers, and Supervisors who could be assigned to any given site at any given time in CE SOLUTIONS GROUP, LLC's discretion, such that the work could and did shift from joint employer to another without material changes.

116.    Corporate Defendants are commonly managed by the same personnel, i.e., Defendants EDUARD and DORA SLININ, JEANNINE NAPOLEONE-COLBERT, NABIH KOUBAISSY, MAHMOUD BEHEIRY, and MADINA SHUKUROVA, who are or act as the owners, managers, and operators of Defendants CE SOLUTIONS GROUP, LLC, NYC 2WAY INTERNATIONAL LTD, UNIQUE TRANS CORP., A&M TRANSPORT TRANSPORT INC, BEKRUZJON INC., BEKRUZJON CORP and are commonly owned and controlled financially by these individuals/entities.

### 5.1.1. Centralized Control of Labor Relations

117.    CE SOLUTIONS GROUP, LLC controlled the economic realities of Plaintiffs' employment, as Plaintiffs performed jobs for CE SOLUTIONS GROUP, LLC through the other Corporate Defendants pursuant to and reliant upon CE SOLUTIONS GROUP, LLC's Blanket Purchase Agreements with ConEd, with all wages flowing directly from compensation CE SOLUTIONS GROUP, LLC received from ConEd.

118.    Defendants CE SOLUTIONS GROUP, LLC's employees "Zach" and "William" ("William" is the husband of Defendant JEANNINE NAPOLEONE-COLBERT), provide training and certifications to new hires at 3007 43rd Street, Astoria, New York 11103. After completing training, the worker is eligible to accept shifts offered by Defendants. "Zach" then opens an account for the new hire through CE SOLUTIONS GROUP, LLC and the new hire is instructed to download the relevant phone application.

119.    Defendants MADINA SHUKUROVA (a/k/a "Dina") and A&M TRANSPORT TRANSPORT INC provides lists of available Flaggers and Spotters, including Plaintiffs, to CE SOLUTIONS GROUP, LLC. CE SOLUTIONS GROUP, LLC then transmits jobs to other Defendants, Plaintiffs, and other workers via phone applications such as "CES Worker" and "UFS Worker".

120.    Each of the Corporate Defendants concurrently controls labor relations between employees and management, as CE SOLUTIONS GROUP, LLC would direct the other Corporate Defendants to staff the ConEd. construction work job sites with Workers who could be assigned to any given site at any given time at CE SOLUTIONS GROUP, LLC's discretion.

### 5.1.2. <u>Interrelation of Operations</u>

121.    Each of the Defendants have, and had, an interrelation of operations by working together to provide employees for the flagging and spotting services for the benefit of ConEd.

### 5.1.3. <u>Supervision, Control, and Maintenance of Payroll Records</u>

122.    Plaintiff and similarly situated employees were required to download smartphone applications designed for CE SOLUTIONS GROUP, LLC including the following applications: "CES Worker" for working parking and flagging, "UFS Worker" newest, "CES Supervisor" for Supervisors, and "CES Inspector."

123.    Upon information and belief, CE SOLUTIONS GROUP, LLC commissioned the creation and programming of the above referenced phone applications.

124.    Defendants used smartphone applications to supervise, control, transmit work schedules and determine the wages and benefits of employees in the field. The applications allowed Defendants to geolocate each worker in real time via GPS, assign tasks, monitor performance, ensure compliance, and closely supervise their work in the field.

125.    "CES Worker" and "UFS Worker" are powerful field management system applications which are designed to enhance productivity and streamline field management for CE SOLUTIONS GROUP, LLC. Field workers would access and manage tasks, schedules and assignments in the field using the application.

126.   The CES Worker and UFS Worker applications also served as a method for employees like Plaintiffs to communicate with supervisors, capture and upload photographs of worksites, documents and other information to transmit to Defendants.

127.   The CES Worker and UFS Worker applications also allowed workers to document project progress, track inventory and manage workflow.

128.   "CES Inspector" is the application for supervisors and managers of CE SOLUTIONS GROUP, LLC and other Defendants to schedule workers such as Plaintiffs, to receive pre-planned schedules, and to designate worker time slots. The CES Inspector application also allowed users to evaluate job performance, site preparedness, review compliance checklists, make and transmit reports, track job and work history, visually map the inspection sequence and plan and manage inspections and promote real time reporting.

129.   "CES Supervisor" is another component of Defendants' field management system and shows workers' job assignments, work schedules and assorted information to supervise employees like Plaintiffs.

130.   Each smartphone application monitors the user's location via GPS. Upon reaching the worksite, workers such as Plaintiffs must secure the site, take pictures of it, and transmit pictures to the Defendants every hour to be paid. If the worker does not send a photograph, the worker is not paid for that hour.

131.   CE SOLUTIONS GROUP, LLC closely monitors the work and location of each worker from its main office, watching their comings, goings and activities in real-time, personally supervising each worker.

132.   At 259 Columbia Street, Brooklyn, NY 11231, CE SOLUTIONS GROUP, LLC maintains a communication and dispatch center to monitor the locations of each flagging and spotting location and Flagger and Spotter using the geolocation service through phone applications that

Flaggers and Spotters were required to download and use during work. CE SOLUTIONS GROUP, LLC receives real-time updates as to the Flagger and Spotter locations.

133.    Throughout the relevant period, Defendants EDWARD SLININ and DORA SLININ have acted as owners, operators, and managers of CE SOLUTIONS GROUP, LLC, directly responsible for establishing the company's payroll policies, including the practices alleged to be unlawful in this complaint.

134.    CE SOLUTIONS GROUP, LLC, contracted directly with Consolidated Edison to perform construction work involving the maintenance, rehabilitation, repair, renovation, excavation, and reconstruction of public roadways in and around New York City. In carrying out this work, CE SOLUTIONS GROUP, LLC jointly employ each Plaintiff and others similarly situated through the named Corporate Defendants.

135.    Defendants JEANNINE NAPOLEONE-COLBERT and NABIH KOUBAISSY monitored Plaintiffs and other employees through these applications on behalf of CE SOLUTIONS GROUP, LLC.

136.    CE SOLUTIONS GROUP, LLC also deployed roaming supervisors to visit Flaggers and Spotters in the field, supervise dress codes, provide instructions, and monitor safety and accuracy of work.

137.    After each shift, Plaintiffs and similarly situated employees were required to fill out timesheets indicating the work request, supervisor, location of work, start and end times, and dates and other information. One such timesheet states on top "Con Edison Flagging / Parking Location" and provides an emergency contact number: "(646)-606-0442" and directs that each Flagger/Spotter then had to send a clear photograph of the completed form to Close@CESolutions.IO. Another such form used for the same purpose states on top "CE SOLUTIONS GROUP, LLC Group 259 Columbia Street / Brooklyn, NY 11231 / 24 hour dispatch (646) 606-0442 / Email: orders@nyc2way.com" and

directly under that states "Con Edison Flagging / Parking Location Timesheet" and on the bottom directs the Flagger/Spotter who fills out the form that "you must take a clear photo of this timesheet and send it to Close@NYC2way.com at the completion of your job."

138.    Workers also sent pictures of the timesheets to Defendant MADINA SHUKUROVA (a/k/a "Dina") to ostensibly forward to Defendants A&M TRANSPORT TRANSPORT INC, and CE SOLUTIONS GROUP, LLC.

139.    "Close@CESolutions.IO" is an email address to reach CE SOLUTIONS GROUP, LLC.

140.    Orders@nyc2way.com is an email to reach CE SOLUTIONS GROUP, LLC.

141.    (646)-606-0442 is the phone number to reach CE SOLUTIONS GROUP, LLC.

142.    CE SOLUTIONS GROUP, LLC kept and maintained all documentation relating to Plaintiffs' work assignments and hours worked within its corporate offices assigned Plaintiffs to each of their jobs through the various Corporate Defendants; and unilaterally decided whether and when to discipline Plaintiffs, including decisions relating to suspending their employment for any workplace rules or infractions enforced by CE SOLUTIONS GROUP, LLC.

143.    Workers would leave the names on the timesheets blank so that CE SOLUTIONS GROUP, LLC could slot in names as they saw fit. CE SOLUTIONS GROUP, LLC knew and encouraged Workers to use multiple names in order to avoid detection for wage violations. Occasionally Workers would receive calls from various Defendants, directing them to provide another name, as the name previously provided had already worked too many hours.

144.    After learning of the various lawsuits, CE SOLUTIONS GROUP, LLC began requiring workers to submit the timesheets such that the name CE SOLUTIONS GROUP, LLC was obscured in the photograph,

5.2. **Misclassification of Workers**

145.    Defendants willfully misclassified Plaintiffs as independent contractors despite exercising complete control over the terms and condition of Plaintiffs' employment, attempting to unlawfully avoid paying them overtime compensation, minimum wages, and to circumvent the other NYLL and NYCRR statutory and regulatory requirements as described herein. Defendants subjected Plaintiffs and putative FLSA Plaintiffs to the following rules / requirements:

146.    Defendants directed Plaintiffs where to perform their work by assigning them with specific job locations;

147.    Defendants required Plaintiffs to remain on-site for their assigned job locations during specific schedules, unilaterally determined by Defendants;

148.    Workers' rates of pay were contingent on whether the Worker took certain steps to obfuscate their employment and pay. For example, a Spotter would receive $8.00 per hour if they were paid directly but receive $9.00 per hour if they created a business entity to receive payment. Plaintiffs did not make any investment of capital into any of the business entities they created, as the entities only existed to funnel money and had no other purpose;

149.    Plaintiffs were required to be on-site at Defendants' direction at a specific location for a specific amount of time while performing the tasks assigned to them by Defendants;

150.    Defendants required Plaintiffs to report their working time to Defendants for the purposes of receiving payment of wages;

151.    Defendants could fire Plaintiffs for any time for and for any reason;

152.    Plaintiffs were required to undergo training and certification through Defendants CE SOLUTIONS GROUP, LLC and/or UNIQUE TRANS CORP d/b/a A&M TRANSPORTATION.

153.    Plaintiffs were to be paid weekly by one of the owners of the Corporate Defendants other than CE SOLUTIONS GROUP, LLC, although pay was regularly received untimely. The funds for payment came from or were ultimately controlled by CE SOLUTIONS GROUP, LLC.

5.3. **Work Done by Plaintiffs and those Similarly Situated**

154.    At all relevant times, Plaintiffs and others similarly situated worked for Defendants in New York and were "employees" entitled to the protections as defined in the FLSA, NYLL, and the NYCRR.

155.    Defendants employed Plaintiffs and others similarly situated as Flaggers, Spotters, and Supervisors.

156.    Plaintiffs and others similarly situated's primary job duties were to physically block off areas on public roadways in New York City to save space for ConEd construction work performed by ConEd workers and/or contractors, an integral part of the construction work. To block off these areas, Defendants required Plaintiffs working as Spotters to remain in place for extended periods of time at fixed locations determined by CE SOLUTIONS GROUP, LLC in consultation with ConEd, and assigned to the other Defendants.

157.    Once Plaintiffs and others similarly situated blocked off an area, Plaintiffs would work as a road Flaggers—directing traffic on public roadways and/or assisting Defendants and/or ConEd during the performance of ConEd's construction work at these various locations.

158.    Defendants required Plaintiffs and other FLSA Plaintiffs to work up to 24 hours per day for days at a time. Defendants would commonly require Plaintiffs to work for well over 100 hours in a single workweek as Defendants required Plaintiffs and other FLSA Plaintiffs to remain on-site for the entire length of any given ConEd construction work job assignment. These assignments could and did last days on end without any predetermined end date known to Plaintiffs and other FLSA Plaintiffs.

159.    Defendants prohibited Plaintiffs and other FLSA Plaintiffs from leaving the area immediately surrounding a given job site absent expressly granted permission to leave. For example, if Plaintiffs needed to leave the job site to use a restroom, he was required to contact CE SOLUTIONS GROUP, LLC's office personnel to request permission to leave for a brief break, which may or may not be granted by the representative of CE SOLUTIONS GROUP, LLC.

160.    When granting Plaintiffs and other putative FLSA Plaintiffs' requests, CE SOLUTIONS GROUP, LLC would send a manager, supervisor, or another Flagger or Spotter to Plaintiffs' job site within thirty minutes to one hour after granting the request, to temporarily relieve the requestor. While waiting for one of CE SOLUTIONS GROUP, LLC's supervisors to arrive, Plaintiffs were prohibited from leaving the job site.

161.    Defendants often refused to grant Plaintiffs and other putative FLSA Plaintiffs' requests for a break, forcing Plaintiffs to eliminate into plastic buckets/containers due to their inability to leave the site.

162.    When Defendants learned that any Plaintiffs or similarly situated workers left the job site without permission, Defendants would suspend the individual from that job and prohibit the worker from performing any additional work until Defendants reassigned Plaintiffs to a new job site.

163.    As punishment for leaving a job site, Defendants commonly threatened to, and oftentimes did refuse to pay Plaintiffs for any of the work already performed on that particular job site.

164.    As further punishment for leaving the job site, Defendants would routinely assign a recently suspended Plaintiff to a short-term job of between a few hours and one-to-three days, a generally a drastic reduction in hours and pay. Once Defendants determined that they could "trust" a recently suspended Plaintiff to stay on a job site indefinitely without any breaks or requests to leave

the job site, only then would Defendants assign Plaintiffs to a longer-term job of more than a few hours or days.

165.    Despite routinely requiring Plaintiffs and others similarly situated to work shifts in excess of ten hours in a workday from start to finish, and despite paying Plaintiffs at rates that were below the New York minimum wage rate, Defendants never provided Plaintiffs with one additional hour's pay at the New York minimum wage rate pursuant to the NYLL's and NYCRR's spread-of-hours provisions.

166.    When Defendants paid Plaintiffs and other similarly situated workers, Defendants did not provide any wage statements at all, thereby failing to provide statements that accurately list Defendants' corporate and/or "dba" names, Plaintiffs' and other FLSA Plaintiffs' actual hours worked, Plaintiffs and other FLSA Plaintiffs' owed overtime rates, and other requirements.

167.    Defendants did not provide Plaintiffs and other FLSA Plaintiffs with any wage notice at the time of their hire, thereby failing to provide notices that accurately contained, *inter alia*, Plaintiffs' rate or rates of pay and basis thereof; whether they would be paid by the hour, salary, or in another manner; allowances, if any, claimed as part of the minimum wage, including meal allowances; the regular payday designated by Defendants in accordance with the NYLL; the corporate name of Defendants; any "doing business as" names used by Defendants; the physical address of Defendants' main office(s) or principal place(s) of business, and a mailing address if different; and Defendants' telephone number(s).

168.    Defendants regularly "deducted" wages from the pay of Plaintiffs for various reasons, with and without explanation as the wages passed through their control, similar to a skim.

169.    Each hour that Plaintiffs and other FLSA Plaintiffs worked was for the Defendants' benefit and resulted in monies due to Plaintiffs being unlawfully retained for Defendants' corporate and personal use.

170.    Defendants acted in the manner described herein to minimize their overhead while maximizing profits.

### 5.4. **Waivers and Retaliation**

171.    At various times Defendants forced Plaintiffs and other similarly situated workers to sign documents ("Waivers") waiving the right to past and future wages, including Overtime and Minimum Wage premiums, owed to them by law.

172.    If Plaintiffs and other similarly situated workers refused to sign these Waivers, they were told the Defendants would not be able to use them as workers.

173.    Defendants asked Plaintiffs and those similarly situated to sign such Waivers because they learned Plaintiffs and other similarly situated workers were seeking to file a lawsuit for wages. Defendants retaliated against Plaintiffs and similarly situated workers by forcing them to waive their right to oppose Defendants' actions.

174.    Defendants also retaliated against Plaintiffs and similarly situated workers by refusing to pay and threatening to refuse to pay Plaintiffs who they learned are participating in lawsuits against them. Such retaliation affects the individuals not receiving their pay and also affects all Plaintiffs and similarly situated workers by chilling participation in the lawsuit.

### 5.5. **Defendants' Payroll Recordkeeping Practices.**

175.    Plaintiffs and all others similarly situated were not given wage statements with each payment of wages as required by the NYLL.

176.    Plaintiffs and all others similarly situated were not given a wage notice at the time of hiring or when rates of pay changed that, *inter alia*, accurately reflected their rate or rates of pay and number of hours worked per week, as required by the NYLL.

177.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified

by the New York State legislature. Defendants' failure to provide such notices trivializes the importance of these notices in protecting Plaintiff's interest in ensuring proper pay.

178.    Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

179.    Here, Defendants' failure goes beyond generating a risk of potential harm to Plaintiffs and similarly situated employees as they were actually harmed. Defendants' failure to provide paystubs listing all hours and rates of pay, including overtime hours and rates, deprived employees of the ability to contest Defendants' calculations, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiffs and Class members' rights. This conduct allowed Defendants to operate providing improper compensation to low wage earners entitled to protection under federal and state law. Moreover, Defendants failure to provide wage notices allowed Defendants to hide the proper frequency of pay to employees. Defendants' failure to provide a wage notice to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

180.    Had the wage statements Defendants provided to Plaintiffs and similarly situated employees accurately listed the total number of hours Plaintiffs and those similarly situated actually worked as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did not correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiffs and Class Members to understand and vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

181.    The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiffs and those similarly situated. This delayed payment caused Plaintiffs and those similarly situated to struggle to pay bills and other debts. Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to hide their wrongdoing from employees, necessitating the current litigation. Defendants' failure to provide NYLL notices continues to result in delayed payment of all proper wages owed to Plaintiffs and Class members.

182.    Defendants knowingly and willfully operated their businesses with a policy of not providing proper wage notices and wage statements as required by NYLL.

183.    The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements.

184.    Defendants' failure to provide Plaintiffs and those similarly situated with accurate wage statements constituted a concrete monetary injury. Had the number of hours been accurately reported, Plaintiffs and those similarly situated would be better able to assess whether they were appropriately paid and that no illicit deductions were made from their time. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiffs with Article III standing.

185.    Further, Defendants required Plaintiffs to use false names and other techniques to obfuscate the number of hours each Plaintiff worked. The lack of accurate wage statements caused Plaintiffs to fail to capture all monies that were due and owing.

6. **ALLEGATIONS OF INDIVIDUAL PLAINTIFFS**

6.1. **Wage and Hour Violations as to Plaintiff AKAKI BUTSKHRIKIDZE**

186.    Plaintiff AKAKI BUTSKHRIKIDZE worked for Defendants from approximately April 15, 2022, to approximately April 22, 2024.

187.    Plaintiff AKAKI BUTSKHRIKIDZE worked for Defendants as a Flagger and Spotter.

188.    Plaintiff AKAKI BUTSKHRIKIDZE  was paid by Defendants MADINA SHUKUROVA (a/k/a "Dina"), BEKRUZJON INC, UNIQUE TRANS CORP d/b/a A&M TRANSPORTATION, MAHMOUD BEHEIRY (a/k/a "Ash"), and NABIH KOUBAISSY (a/k/a "Nabil Simba") with funds provided by CE SOLUTIONS GROUP, LLC.

189.    Plaintiff AKAKI BUTSKHRIKIDZE  was supervised by Defendants CE SOLUTIONS GROUP, LLC, MADINA SHUKUROVA (a/k/a "Dina"), and NABIH KOUBAISSY (a/k/a "Nabil Simba").

190.    CE SOLUTIONS GROUP, LLC also provided training to Plaintiff AKAKI BUTSKHRIKIDZE.

191.    Throughout his entire employment, Plaintiff AKAKI BUTSKHRIKIDZE generally worked well in excess of 40 hours per week, including frequently working over 24-hour shifts.

192.    By way of example, from December 5, 2022 to December 11, 2022, Defendants required Plaintiff to work, and Plaintiff did in fact work all seven days of that week. He continuously worked from 12:01 AM on Monday December 05, 2022, to 11:00 AM on Thursday, December 08, 2022. He worked again that week from 6:00 AM on Friday December 09, 2022 to 11:59 PM on December 11, 2022. In total, Plaintiff AKAKI BUTSKHRIKIDZE worked one hundred forty-nine (149) hours that week.

### 6.1.1. <u>Wages and Hours</u>

193.    From approximately April 15, 2022 to approximately December 30, 2022, Plaintiff AKAKI BUTSKHRIKIDZE was paid approximately $11 per hour as a Spotter, despite working over 40 hours in a week.

194.    From approximately December 30, 2022 to April 10, 2023, Plaintiff AKAKI BUTSKHRIKIDZE's rate would depend on the type of job he was tasked with. If AKAKI BUTSKHRIKIDZE worked as a Flagger he was paid $16 an hour, and if Plaintiff worked as a parking attendant he was paid $11 an hour, despite working over 40 hours in a week.

195.    From approximately April 11, 2023, to approximately January 2024, Plaintiff AKAKI BUTSKHRIKIDZE's effective rate would be between $2 and $1 an hour, regardless of hours worked, due to deductions from his pay and pay shortfalls from the Defendants

196.    From approximately January 2024 to March 17, 2024, Plaintiff AKAKI BUTSKHRIKIDZE's rate would be $17 an hour, regardless of hours worked.

### 6.1.2. <u>Deducted Wages</u>

197.    Throughout his employment, Defendants deducted pay from Plaintiff AKAKI BUTSKHRIKIDZE and other Supervisors for various reasons.

198.    For example, on or about April 24, 2024, Defendants deducted $9,700.00 from the wages of Plaintiff AKAKI BUTSKHRIKIDZE without lawful authorization.

199.    Defendants deducted $500 from each paycheck of Plaintiff AKAKI BUTSKHRIKIDZE and other Supervisors as an involuntary investment in Defendants' businesses, but he never received anything in return for these deductions. Plaintiff AKAKI BUTSKHRIKIDZE calculates over $30,000 in deductions from his pay by Defendants for this deduction alone.

200.     Plaintiff AKAKI BUTSKHRIKIDZE was regularly unpaid for the first 40 hours of his workweek due to his activities as a Supervisor. He would only receive remuneration for hours over 40 in a workweek during those weeks.

### 6.1.3. Spread of Hours

201.     Plaintiff AKAKI BUTSKHRIKIDZE was not paid a spread of hours premium for shifts and/or split shifts worked in excess of ten (10) hours in violation of the NYLL.

202.     Throughout his entire employment Plaintiff AKAKI BUTSKHRIKIDZE generally worked well in excess of ten (10) hours a day.

### 6.1.4. Retaliation

203.     On or about April 15, 2024, Defendants MADINA SHUKUROVA (a/k/a "Dina") and NABIH KOUBAISSY (a/k/a "Nabil Simba") demanded that Plaintiff AKAKI BUTSKHRIKIDZE sign a broad general release, releasing Defendants CE SOLUTIONS GROUP, LLC, UNIQUE TRANS CORP d/b/a A&M TRANSPORTATION, and nonparty ConEd., from liability for violations of, *inter alia*, the Fair Labor Standards Act and New York Labor Law. When Plaintiff declined to sign, Plaintiff AKAKI BUTSKHRIKIDZE and other FLSA Plaintiffs were not paid for work they had completed for two weeks, nor was Plaintiff provided with funds to pay coworkers who expected to be paid for flagging and spotting work they had performed for Defendants. And finally, Plaintiff AKAKI BUTSKHRIKIDZE and other FLSA Plaintiffs were not allowed to continue working.

204.     On or about April 22, 2024., Plaintiff AKAKI BUTSKHRIKIDZE and other FLSA Plaintiffs engaged in protected activity by complaining of the wage violation to Defendant NABIH KOUBAISSY (a/k/a "Nabil Simba") at 3007 43rd Street, Astoria, New York 11103.

205.     After making the complaint, Defendants UNIQUE TRANS CORP d/b/a A&M TRANSPORTATION and CE SOLUTIONS GROUP, LLC retaliated by demanding that Plaintiff

AKAKI BUTSKHRIKIDZE sign a release and waiver of all rights to bring claims under the FLSA, NYLL and other employment laws and otherwise refusing to employ Plaintiff and other FLSA Plaintiffs, blocking them out from CE SOLUTIONS GROUP, LLC's job management applications.

6.2. **Wage and Hour Violations as to Plaintiff ALEKSANDRE CHINCHALADZE**

206.    Plaintiff ALEKSANDRE CHINCHALADZE worked for each Defendant from approximately September 15, 2022 to approximately April 22, 2024.

207.    Plaintiff ALEKSANDRE CHINCHALADZE worked for Defendants as a Flagger, and Spotter.

208.    Plaintiff ALEKSANDRE CHINCHALADZE was supervised by Defendants CE SOLUTIONS GROUP, LLC and was paid with funds provided by CE SOLUTIONS GROUP, LLC

209.    CE SOLUTIONS GROUP, LLC also provided training to Plaintiff ALEKSANDRE CHINCHALADZE.

210.    Plaintiff ALEKSANDRE CHINCHALADZE  generally worked well in excess of 40 hours per week, including frequently working over 24-hour shifts.

211.    By way of example, from March 4, 2024 to March 10, 2024, Defendants required Plaintiff ALEKSANDRE CHINCHALADZE to work, and Plaintiff did in fact work all seven days of that week. He continuously worked from 12:00 AM on Monday March 4, 2024, to 2:00 PM on Monday, March 4, 2024. He worked again that week from 3:08 PM on Monday, March 4, 2024 to 2:46 PM on Thursday, March 07, 2024. He worked an additional shift beginning that same Thursday, on 6:00 PM to 5:00 PM on Friday, March 08, 2024. Finally, Plaintiff worked a shift starting 6:00 AM on Saturday, March 09, 2024 to 12:00 PM on Sunday, March 10, 2024. In total, Plaintiff ALEKSANDRE CHINCHALADZE worked approximately one hundred thirty-seven (137) hours that week

### 6.2.1. <u>Wages and Hours</u>

212.    From approximately September 15, 2022 to approximately present, Plaintiff ALEKSANDRE CHINCHALADZE  was paid a rate of pay of approximately $9 per hour, despite working over 40 hours in a week.

### 6.2.2. <u>Deducted Wages</u>

213.    Throughout his employment, Defendants deducted hours and therefore pay from Plaintiff ALEKSANDRE CHINCHALADZE.

214.    For example, between September 9, 2023 and October 9, 2023, Defendant deducted 68.76 hours from the timesheet of Plaintiff ALEKSANDRE CHINCHALADZE without lawful authorization.

### 6.2.3. <u>Spread of Hours</u>

215.    Plaintiff ALEKSANDRE CHINCHALADZE was not paid a spread of hours premium for shifts and/or split shifts worked in excess of ten (10) hours in violation of the NYLL.

216.    Throughout his entire employment, Plaintiff ALEKSANDRE CHINCHALADZE worked well in excess of ten (10) hours a day for the majority of days.

### 6.2.4. <u>Retaliation</u>

217.    Defendants retaliated against Plaintiff ALEKSANDRE CHINCHALADZE by demanding that he waive rights to the wages owed, to future wages, and to his rights to seek redress.

### 6.3. <u>Wage and Hour Violations as to Plaintiff SERGO GELASHVILI</u>

218.    Plaintiff SERGO GELASHVILI worked for each Defendant from approximately April 2023 to approximately March 2023.

219.    Plaintiff SERGO GELASHVILI  worked for Defendants as a Spotter.

220.    Plaintiff SERGO GELASHVILI was supervised by Defendants CE SOLUTIONS GROUP, LLC and was paid with funds provided by CE SOLUTIONS GROUP, LLC.

221.    CE SOLUTIONS GROUP, LLC also provided training to Plaintiff SERGO GELASHVILI.

222.    Plaintiff SERGO GELASHVILI  generally worked well in excess of 40 hours per week, including frequently working over 24-hour shifts.

223.    By way of example, from August 31, 2023 to September 6, 2023, Defendants required Plaintiff SERGO GELASHVILI to work, and Plaintiff did in fact work six days of that week. He worked continuously, starting from 8:00 PM on Thursday, August 31, 2023 to 8:30 AM on Wednesday, September 6, 2023. Plaintiff SERGO GELASHVILI worked approximately one hundred thirty-two (132) from that shift alone.

### 6.3.1. Wages and Hours

224.    From approximately September 15, 2022 to approximately present, Plaintiff SERGO GELASHVILI was paid a rate of pay of approximately $10 per hour, despite working over 40 hours in a week.

### 6.3.2. Deducted Wages

225.    Throughout his employment, Defendants deducted hours and therefore pay from Plaintiff SERGO GELASHVILI.

### 6.3.3. Spread of Hours

226.    Plaintiff SERGO GELASHVILI was not paid a spread of hours premium for shifts and/or split shifts worked in excess of ten (10) hours in violation of the NYLL.

227.    Throughout his entire employment, Plaintiff SERGO GELASHVILI worked well in excess of ten (10) hours a day for the majority of days.

### 6.3.4. Retaliation

228.    Defendants retaliated against Plaintiff SERGO GELASHVILI by demanding that he waive rights to the wages owed, to future wages, and to his rights to seek redress.

6.4. **Wage and Hour Violations as to Plaintiff GIORGI GIGATADZE**

229.   Plaintiff GIORGI GIGATADZE worked for Defendants from approximately October 2022, to approximately February 2024.

230.   Plaintiff GIORGI GIGATADZE worked for Defendants as a Flagger, Spotter, and Supervisor.

231.   Plaintiff GIORGI GIGATADZE  was paid by Defendants MADINA SHUKUROVA (a/k/a "Dina"), BEKRUZJON INC, UNIQUE TRANS CORP d/b/a A&M TRANSPORTATION, MAHMOUD BEHEIRY (a/k/a "Ash"), and NABIH KOUBAISSY (a/k/a "Nabil Simba") with funds provided by CE SOLUTIONS GROUP, LLC.

232.   Plaintiff GIORGI GIGATADZE  was supervised by Defendants CE SOLUTIONS GROUP, LLC, MADINA SHUKUROVA (a/k/a "Dina"), and NABIH KOUBAISSY (a/k/a "Nabil Simba").

233.   CE SOLUTIONS GROUP, LLC also provided training to Plaintiff GIORGI GIGATADZE.

234.   Throughout his entire employment, Plaintiff GIORGI GIGATADZE generally worked well in excess of 40 hours per week, including frequently working over 24-hour shifts.

235.   By way of example, from Monday, February 4, 2023 to Sunday, February 11, 2023, Defendants required Plaintiff GIORGI GIGATADZE to work, and Plaintiff did in fact work five (5) days of that week for 8 hours each day as a Supervisor. He additionally worked another 16 hours Monday through Friday and 24 hours on both Saturday and Sunday as a Spotter.  In total. Plaintiff GIORGI GIGATADZE worked approximately eighty-seven (168) hours that week.

### 6.4.1. <u>Wages and Hours</u>

236.    From approximately October 2022 to approximately February 2024, Plaintiff GIORGI GIGATADZE was paid approximately $10 per hour, despite working over 40 hours in a week.

237.    In or around March 2023, GIORGI GIGATADZE was given the title of Supervisor. He was then required to work 40 hours every week as a Supervisor, in addition to other hours as a Spotter. During those Supervisor shifts, he was required to pay another employee to cover his Spotter shifts, costing him $120.00 per shift or $600.00 per week.

### 6.4.2. <u>Deducted Wages</u>

238.    Throughout his employment, Defendants deducted pay from Plaintiff GIORGI GIGATADZE for various and unclear reasons.

239.    For example, in April of 2023, GIORGI GIGATADZE asked Dina if he could stop working as a Supervisor. Dina told him that he would be required to pay the Supervisor's wages if he did not work the shift. Starting in March of 2023, Defendants deducted $500 each week as a deposit or buyin from Giorgi In July of 2023, the deduction increased to $2,000 per week, and continued until October 2023 to pay additional supervisors.

240.    Plaintiff GIORGI GIGATADZE was regularly unpaid for the first 40 hours of his workweek due to his activities as a Supervisor. He would only receive remuneration for hours over 40 in a workweek during those weeks.

### 6.4.3. <u>Spread of Hours</u>

241.    Plaintiff GIORGI GIGATADZE was not paid a spread of hours premium for shifts and/or split shifts worked in excess of ten (10) hours in violation of the NYLL.

242.    Throughout his entire employment Plaintiff GIORGI GIGATADZE generally worked well in excess of ten (10) hours a day.

### 6.4.4. <u>Retaliation</u>

243.    Defendants retaliated against Plaintiff GIORGI GIGATADZE Click or tap here to enter text. by demanding that he waive rights to the wages owed, to future wages, and to his rights to seek redress.

### 6.5. <u>Wage and Hour Violations as to Plaintiff GOGA GIGAURI</u>

244.    Plaintiff GOGA GIGAURI worked for each Defendant from approximately April 2023 to approximately November 2023.

245.    Plaintiff GOGA GIGAURI  worked for Defendants as a Spotter and Coordinator.

246.    Plaintiff GOGA GIGAURI was supervised by Defendants CE SOLUTIONS GROUP, LLC and was paid with funds provided by CE SOLUTIONS GROUP, LLC

247.    CE SOLUTIONS GROUP, LLC also provided training to Plaintiff GOGA GIGAURI.

248.    Plaintiff GOGA GIGAURI  generally worked well in excess of 40 hours per week, including frequently working over 24-hour shifts.

249.    By way of example, from Saturday April 15, 2023 to the following Saturday April 22, 2023, Defendant required Plaintiff GOGA GIGAURI to work, and Plaintiff did in fact work seven (7) days that week. He continuously worked from 12:00 AM on Saturday April 15, 2023 to 8:00 PM on Wednesday, April 20, 2023. He worked an additional 20 hours on Thursday April, 21 and an additional 24 hours on Friday April 22, 2023. In total, Plaintiff GOGA GIGAURI worked approximately one-hundred and sixty-eight (160) hours that week.

### 6.5.1. <u>Wages and Hours</u>

250.    Plaintiff GOGA GIGAURI was paid a rate of pay of approximately $9 per hour, despite working over 40 hours in a week.

### 6.5.2. **Deducted Wages**

251.    Throughout his employment, Defendants deducted hours and therefore pay from Plaintiff GOGA GIGAURI.

### 6.5.3. **Spread of Hours**

252.    Plaintiff GOGA GIGAURI was not paid a spread of hours premium for shifts and/or split shifts worked in excess of ten (10) hours in violation of the NYLL.

253.    Throughout his entire employment, Plaintiff GOGA GIGAURI worked well in excess of ten (10) hours a day for the majority of days.

### 6.5.4. **Retaliation**

254.    Defendants retaliated against Plaintiff GOGA GIGAURI by demanding that he waive rights to the wages owed, to future wages, and to his rights to seek redress.

### 6.6. **Wage and Hour Violations as to Plaintiff GIORGI NINIDZE**

255.    Plaintiff GIORGI NINIDZE worked for each Defendant from approximately April 2023 to approximately November 2023.

256.    Plaintiff GIORGI NINIDZE  worked for Defendants as a Spotter.

257.    Plaintiff GIORGI NINIDZE was supervised by Defendants CE SOLUTIONS GROUP, LLC and was paid with funds provided by CE SOLUTIONS GROUP, LLC

258.    CE SOLUTIONS GROUP, LLC also provided training to Plaintiff GIORGI NINIDZE.

259.    Plaintiff GIORGI NINIDZE  generally worked well in excess of 40 hours per week, including frequently working over 24-hour shifts.

260.    By way of example, from Monday December 18, 2023 to Sunday December 24, 2023 Defendants required Plaintiff GIORGI NINIDZE to work, and Plaintiff GIORGI NINIDZE did in fact work four (4) days of that week. He continuously worked from 7:00 AM on Tuesday, December

19, 2023 to 12:00 PM on Friday, December 22, 2023. Plaintiff GIORGI NINIDZE worked approximately fifty-one (51) hours within that single week alone.

### 6.6.1. Wages and Hours

261.    Plaintiff GIORGI NINIDZE  was paid a rate of pay of approximately $9 per hour, despite working over 40 hours in a week.

### 6.6.2. Deducted Wages

262.    Throughout his employment, Defendants deducted hours and therefore pay from Plaintiff GIORGI NINIDZE.

### 6.6.3. Spread of Hours

263.    Plaintiff GIORGI NINIDZE  was not paid a spread of hours premium for shifts and/or split shifts worked in excess of ten (10) hours in violation of the NYLL.

264.    Throughout his entire employment, Plaintiff GIORGI NINIDZE worked well in excess of ten (10) hours a day for the majority of days.

### 6.6.4. Retaliation

265.    Defendants retaliated against Plaintiff GIORGI NINIDZE by demanding that he waive rights to the wages owed, to future wages, and to his rights to seek redress.

### 6.7. Wage and Hour Violations as to Plaintiff GIORGI LIPARTIA

266.    Plaintiff GIORGI LIPARTIA worked for each Defendant from approximately March 2024 to approximately May 2024.

267.    Plaintiff  GIORGI LIPARTIA worked for Defendants as a Spotter.

268.    Plaintiff GIORGI LIPARTIA was supervised by Defendants CE SOLUTIONS GROUP, LLC and was paid with funds provided by CE SOLUTIONS GROUP, LLC

269.    CE SOLUTIONS GROUP, LLC also provided training to Plaintiff GIORGI LIPARTIA.

270.    Plaintiff GIORGI LIPARTIA  generally worked well in excess of 40 hours per week, including frequently working over 24-hour shifts.

271.    By way of example, from April 1, 2024-April 5, 2024, Defendants required Plaintiff GIORGI LIPARTIA to work, and Plaintiff GIORGI LIPARTIA did in fact work, 87 hours. He continuously worked from 12:00 AM on April 1, 2024 to 12:00 PM on April 3, 2024. Plaintiff additionally worked from 7:00 AM on April 4, 2024 to 10:00 AM on April 5, 2024.

272.    In total, Plaintiff GIORGI LIPARTIA worked eighty-seven hours (87) that week.

### 6.7.1. Wages and Hours

273.    Plaintiff GIORGI LIPARTIA was paid a rate of pay of approximately $9.00 per hour, despite working over 40 hours in a week.

### 6.7.2. Deducted Wages

274.    Throughout his employment, Defendants deducted hours and therefore pay from Plaintiff GIORGI LIPARTIA.

### 6.7.3. Spread of Hours

275.    Plaintiff GIORGI LIPARTIA was not paid a spread of hours premium for shifts and/or split shifts worked in excess of ten (10) hours in violation of the NYLL.

276.    Throughout his entire employment, Plaintiff GIORGI LIPARTIA worked well in excess of ten (10) hours a day for the majority of days.

### 6.7.4. Retaliation

277.    Defendants retaliated against Plaintiff Click or tap here to enter text. by demanding that he waive rights to the wages owed, to future wages, and to his rights to seek redress.

### 6.8. Wage and Hour Violations as to Plaintiff TAMAZ SABAURI

278.    Plaintiff TAMAZ SABAURI worked for each Defendant from approximately April 2023 to approximately January 2024.

279.    Plaintiff TAMAZ SABAURI  worked for Defendants as a Spotter.

280.    Plaintiff TAMAZ SABAURI was supervised by Defendants CE SOLUTIONS GROUP, LLC and was paid with funds provided by CE SOLUTIONS GROUP, LLC

281.    CE SOLUTIONS GROUP, LLC also provided training to Plaintiff TAMAZ SABAURI.

282.    Plaintiff TAMAZ SABAURI  generally worked well in excess of 40 hours per week, including frequently working over 24-hour shifts.

283.    By way of example, from January 1, 2024 to January 8, 2024, Defendants required Plaintiff TAMAZ SABAURI to work, and Plaintiff TAMAZ SABAURI did in fact work, eight (5) days within one singular shift. Plaintiff continuously worked from 12:00 AM on Monday, January 1, 2024 to 12:00 AM on Monday, January 8, 2024. In total, Plaintiff TAMAZ SABAURI worked one hundred and sixty-eight hours (168) within that singular shift.

### 6.8.1. Wages and Hours

284.    From approximately September 15, 2022 to approximately present, Plaintiff TAMAZ SABAURI was paid a rate of pay of approximately $9.00 to $10.00 per hour, despite working over 40 hours in a week.

### 6.8.2. Deducted Wages

285.    Throughout his employment, Defendants deducted hours and therefore pay from Plaintiff TAMAZ SABAURI.

### 6.8.3. Spread of Hours

286.    Plaintiff TAMAZ SABAURI was not paid a spread of hours premium for shifts and/or split shifts worked in excess of ten (10) hours in violation of the NYLL.

287.    Throughout his entire employment, Plaintiff TAMAZ SABAURI worked well in excess of ten (10) hours a day for the majority of days.

### 6.8.4. **Retaliation**

288.    Defendants retaliated against Plaintiff TAMAZ SABAURI by demanding that he waive rights to the wages owed, to future wages, and to his rights to seek redress.

### 6.9. **Wage and Hour Violations as to Plaintiff GIORGI SURMANIDZE**

289.    Plaintiff GIORGI SURMANIDZE worked for each Defendant from approximately May 2023 to approximately February 2024.

290.    Plaintiff GIORGI SURMANIDZE Click or tap here to enter text.  worked for Defendants as a Spotter.

291.    Plaintiff GIORGI SURMANIDZE  was supervised by Defendants CE SOLUTIONS GROUP, LLC.

292.    CE SOLUTIONS GROUP, LLC also provided training to Plaintiff GIORGI SURMANIDZE .

293.    Plaintiff GIORGI SURMANIDZE generally worked well in excess of 40 hours per week, including frequently working over 24-hour shifts.

294.    By way of example, from January 8, 2024 to January 15, 2024, Defendants required Plaintiff GIORGI SURMANIDZE to work, and Plaintiff did in fact work all seven days of that week. He worked from 12:00 AM to 9:00 AM on Monday, January 8, 2024. Plaintiff then worked from 3:05 PM  on Monday, January 8, 2024 to 8:21 AM on Tuesday, January 9, 2024. He worked that same day Tuesday from 12:00 PM to 2:00 PM. Plaintiff then worked from 6:00 AM on Wednesday, January 10, 2024 to 4:30 AM on Thursday, January 11, 2024. Plaintiff additionally worked that same day Thursday from 9:00 AM to 12:00 PM. Finally, Plaintiff continuously worked from 7:06 PM on Thursday, January 11, 2024 to 12:00 AM on Monday, January 11, 2024. GIORGI SURMANIDZE worked approximately one hundred twenty-nine (129) hours that week from Saturday, January 6, 2024 to Friday, January 12, 2024

### 6.9.1. **Wages and Hours**

295.    Plaintiff GIORGI SURMANIDZE  was paid a rate of pay of approximately $9.00 to $10.00 per hour, despite working over 40 hours in a week.

### 6.9.2. **Deducted Wages**

296.    Throughout his employment, Defendants deducted hours and therefore pay from Plaintiff GIORGI SURMANIDZE .

### 6.9.3. **Spread of Hours**

297.    Plaintiff GIORGI SURMANIDZE  was not paid a spread of hours premium for shifts and/or split shifts worked in excess of ten (10) hours in violation of the NYLL.

298.    Throughout his entire employment, Plaintiff GIORGI SURMANIDZE worked well in excess of ten (10) hours a day for the majority of days.

### 6.9.4. **Retaliation**

299.    Defendants retaliated against Plaintiff GIORGI SURMANIDZE by demanding that he waive rights to the wages owed, to future wages, and to his rights to seek redress.

### 6.10. **Wage and Hour Violations as to Plaintiff BESIK TSIKHELISHVILI**

300.    Plaintiff BESIK TSIKHELISHVILI worked for each Defendant from approximately September 1, 2023 to approximately April 2024.

301.    Plaintiff BESIK TSIKHELISHVILI worked for Defendants as a Spotter.

302.    Plaintiff BESIK TSIKHELISHVILI  was supervised by Defendants CE SOLUTIONS GROUP, LLC and was paid with funds provided by CE SOLUTIONS GROUP, LLC

303.    CE SOLUTIONS GROUP, LLC also provided training to Plaintiff BESIK TSIKHELISHVILI.

304.    Plaintiff BESIK TSIKHELISHVILI  generally worked well in excess of 40 hours per week, including frequently working over 24-hour shifts.

305.    By way of example, from January 29, 2024 to February 4, 2024, Defendants required Plaintiff BESIK TSIKHELISHVILI to work, and Plaintiff BESIK TSIKHELISHVILI did in fact work, all seven days of that week. He continuously worked from 12:00 AM on Monday January 29, 2024, to 9:40 AM on Tuesday, January 30, 2024. Plaintiff worked again that week from 8:00 PM on Tuesday January 30, 2024 to 11:00 AM on Wednesday, January 31, 2024.  Plaintiff then worked from 4:00 PM on Wednesday, January 31, 2024 to 9:30 AM on Thursday, February 1, 2024. Finally, he continuously worked from 11:46 AM on Thursday, February 1, 2024 to 4:00 PM on Sunday, February 4, 2024. In total, Plaintiff BESIK TSIKHELISHVILI worked one hundred forty-one hours (141) that week.

### 6.10.1. Wages and Hours

306.    Plaintiff BESIK TSIKHELISHVILI was paid a rate of pay of approximately $9.00 to $10.00 per hour, despite working over 40 hours in a week.

### 6.10.2. Deducted Wages

307.    Throughout his employment, Defendants deducted hours and therefore pay from Plaintiff BESIK TSIKHELISHVILI.

### 6.10.3. Spread of Hours

308.    Plaintiff BESIK TSIKHELISHVILI was not paid a spread of hours premium for shifts and/or split shifts worked in excess of ten (10) hours in violation of the NYLL.

309.    Throughout his entire employment, Plaintiff BESIK TSIKHELISHVILI worked well in excess of ten (10) hours a day for the majority of days.

### 6.10.4. Retaliation

310.    Defendants retaliated against Plaintiff BESIK TSIKHELISHVILI by demanding that he waive rights to the wages owed, to future wages, and to his rights to seek redress.

### 6.11. **Wage and Hour Violations as to Plaintiff ZVAIDI KHADURI**

311.    Plaintiff ZVAIDI KHADURI worked for each Defendant from approximately August 2023 to approximately May 2024.

312.    Plaintiff ZVAIDI KHADURI worked for Defendants as a Spotter and Flagger.

313.    Plaintiff ZVAIDI KHADURI  was supervised by Defendants CE SOLUTIONS GROUP, LLC and was paid with funds provided by CE SOLUTIONS GROUP, LLC

314.    CE SOLUTIONS GROUP, LLC also provided training to Plaintiff ZVAIDI KHADURI.

315.    Plaintiff ZVAIDI KHADURI  generally worked well in excess of 40 hours per week, including frequently working over 24-hour shifts.

316.    By way of example, from April 1, 2024 to April 8, 2024, Defendants required Plaintiff ZVAIDI KHADURI to work, and Plaintiff did in fact work all seven days of that week. He continuously worked from 12:00 PM on Monday April 01, 2024, to 8:51 AM on Wednesday, April 03, 2024. He worked again that week from 12:19 PM on Wednesday, April 03, 2024 to 3:25 AM on Thursday, April 04, 2024. He worked an additional shift that same Thursday, from 9:29 AM to 3:00 PM. Finally, Plaintiff worked a shift starting 8:21 AM on Friday April 5, 2024 to 12:00 AM on Monday, April 8, 2024. In total, Plaintiff ZVAIDI KHADURI worked approximately one hundred twenty-nine (129) hours that week.

#### 6.11.1. **Wages and Hours**

317.    Plaintiff ZVAIDI KHADURI was paid a rate of pay of approximately $9.00 to $10.00 per hour, despite working over 40 hours in a week.

#### 6.11.2. **Deducted Wages**

318.    Throughout his employment, Defendants deducted hours and therefore pay from Plaintiff ZVAIDI KHADURI.

### 6.11.3. **Spread of Hours**

319.    Plaintiff ZVAIDI KHADURI was not paid a spread of hours premium for shifts and/or split shifts worked in excess of ten (10) hours in violation of the NYLL.

320.    Throughout his entire employment, Plaintiff GIORGI SURMANIDZE worked well in excess of ten (10) hours a day for the majority of days.

### 6.11.4. **Retaliation**

321.    Defendants retaliated against Plaintiff ZVAIDI KHADURI by demanding that he waive rights to the wages owed, to future wages, and to his rights to seek redress.

## 7.  **COLLECTIVE ACTION ALLEGATIONS**

322.    Plaintiffs bring this action on behalf of themselves and all similarly situated non-exempt employees (the putative "FLSA Collective"), including but not limited to current and former Flaggers, Spotters, Supervisors and other similarly situated non-exempt workers who, during the applicable FLSA limitations period, performed any work for any of the Defendants, and who is owed damages due to improper compensation and consents to file a claim to recover damages for: (1) minimum wage and overtime compensation that is legally due to them; and/or (2) liquidated damages that are legally due to them; (3) attorney's fees and costs, and such other and further legal and equitable relief as allowed.

323.    As part of their regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to the Plaintiffs and the putative FLSA Collective. This policy and pattern or practice includes but is not limited to violating provisions of the FLSA set forth in the causes of action hereinbelow:

a.    Willfully failing to pay the Plaintiffs and the putative FLSA minimum wages for all hours worked;

b.  Willfully failing to pay Plaintiffs and the putative FLSA Collective overtime wages at an amount equal to the rate of one and one-half times their respective regular rates of pay for all hours worked each workweek above forty;

c.  Willfully failing to record all the time that its employees, including Plaintiffs and the putative FLSA Collective, have worked for the benefit of Defendants.

324.    Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant damage to Plaintiffs and the putative FLSA Collective.

325.    The putative FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. All similarly situated employees can be readily identified and located through Defendants' records. The similarly situated employees should be notified of and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b).

326.    Upon information and belief, those similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

## 8.  CLASS ACTION ALLEGATIONS

327.    Plaintiffs bring the claims in this Complaint arising out of the NYLL under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class consisting of all non-exempt employees including but not limited to current and former Flaggers, Spotters, Supervisors, and other non-exempt workers, who work or have worked for Defendants within the six years and 228 days prior to the filing of this Complaint and who consent to file a claim to recover damages for: (1) minimum wage, overtime, and/or spread of hours compensation that is legally due to them; and/or (2) liquidated damages that are legally due to them; and/or (3) damages under the Wage Theft Protection Act; and/or (4) damages under the NYLL's ban on deductions from employee's wages at NYLL § 193; and/or (5) damages under the Construction Industry Fair Play Act; and/or (6) damages

under the Freelance Isn't Free Act, and/or (7) damages for unjust enrichment attorney's fees, costs, interest, and such other and further legal and equitable relief as allowed (the putative "Rule 23 Class").

328.    The class is so numerous that joinder of all members is impracticable because there are more than 40 members of the putative Rule 23 Class.

329.    There are questions of law or fact common to the class including but not limited to: (a) whether Defendants paid lawful minimum wages to the putative Rule 23 Class under the NYLL; (b) whether Defendants paid lawful overtime wages to the putative Rule 23 Class under the NYLL; (c) whether Defendants paid lawful spread-of-hours wages to the putative Rule 23 Class under the NYLL and implementing regulations; (d) whether Defendants are liable for liquidated damages to the putative Rule 23 Class for unpaid minimum, overtime, and spread of hours wages; (e) whether Defendants violated the Wage Theft Prevention Act, the Construction Industry Fair Play Act, and the NYLL's ban on deductions from employee's wages at NYLL § 193 regarding members of the putative Rule 23 Class; (f) whether Defendants were unjustly enriched; and whether and to what extent Defendants are liable for attorney's fees, costs, and interest in an amount to be determined by the Court.

330.    The claims or defenses of the representative parties are typical of the claims or defenses of the class because anyone would seek the same discovery, make the same legal arguments, and rely on the same factual record for summary judgment, work or worked for Defendants within the statutory period, and sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

331.    Plaintiffs and members of the putative Rule 23 Class were all injured in that they were victims of Defendants' violations of the NYLL due to Defendants' common policies, practices, and patterns of conduct.

332.    The named Plaintiffs will fairly and adequately protect the interests of the class.

333.    Named Plaintiffs have retained legal counsel competent and experienced in wage and hour litigation and class action litigation.

334.    There is no conflict between the named Plaintiffs and the Rule 23 Class members.

335.    Prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

336.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.

337.    Class action treatment will permit a large number of similar people to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

338.    Defendants acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

339.    Questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy given (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or

undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

9. **CAUSES OF ACTION**

9.1. **Violations of the Fair Labor Standards Act**

340.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

341.    Plaintiffs consented in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b).

342.    At all relevant times, each Defendant was an "employer" as defined in 29 U.S.C. § 203.

343.    At all relevant times, each Plaintiff was an "employee" as defined in 29 U.S.C. § 203.

344.    At all relevant times, each Defendant was engaged in commerce or in the production of goods or commerce as defined in 29 U.S.C. § 203, 206 and 207.

345.    Plaintiffs and each member of the putative FLSA Collective are a covered individual within the meaning of the FLSA under 29 U.S.C. § 203, 206 and 207.

346.    At all relevant times, Defendants employed Plaintiffs and each member of the putative FLSA Collective within the meaning of the FLSA.

347.    At all relevant times, Defendants had gross annual revenues in excess of $500,000.

348.    Plaintiffs and members of the putative FLSA Collective were not paid minimum wage as required under 29 U.S.C. § 206.

349.    Plaintiffs and member of the putative FLSA Collective were not paid overtime as required under 29 U.S.C. § 207.

350.    Records, if any, concerning the number of hours worked by each Plaintiff and each member of the putative FLSA Collective Plaintiffs and the actual compensation paid to each Plaintiff and the members of the putative FLSA Collective should be in the possession and custody of Defendants. Each Plaintiff intends to obtain these records by appropriate discovery proceedings to

be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

351.    Each Defendant's unlawful conduct has been willful and intentional. Each Defendant knew or should have known that the practices described in this Complaint were unlawful. Each Defendant did not make a good faith effort to comply with the FLSA with respect to compensating each Plaintiff and each member of the FLSA collective.

352.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 et seq.

353.    As a result of each violation of the FLSA, each Plaintiff and member of the putative FLSA Collective suffered damages in amounts to be determined at trial and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 et seq.

354.    Each Plaintiff and each member of the putative FLSA Collective is entitled to an award of his reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

9.2. **Violations of the New York Labor Law**

355.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

356.    At all relevant times, Plaintiffs and putative Class Members were employed by Defendants within the meaning of the New York Labor Law §§ 2, 650, and 651 et seq. and the supporting New York State Department of Labor Regulations.

357.    Each Defendant knowingly and willfully violated each Plaintiff's and each putative Class Member's rights by failing to pay all lawful wages for all hours worked.

358.    Each Defendant knowingly and willfully violated each Plaintiff's and putative Class Member's rights by failing to pay lawful minimum wages at rates set forth in the New York Labor Law.

359. Each Defendant knowingly and willfully violated each Plaintiff's and putative Class Member's rights by failing to pay overtime compensation at rates of not less than one and one-half times each Plaintiff's and putative Class Member's regular hourly rate of pay, for each hour worked in excess of forty (40) hours in a workweek.

360. Each Defendant knowingly and willfully violated each Plaintiff's and putative Class Member's rights by failing to pay "spread of hours" premiums to each Plaintiff and putative Class Member for each day worked in excess of ten (10) hours pursuant to N.Y. Comp. Code Rules & Regs. tit. 12 §§ 142-2.4 4, 146-1.6.

361. Each Defendant knowingly and willfully violated each Plaintiff's and putative Class Member's rights by not providing each Plaintiff and putative Class Member with a document or written statement accurately accounting for their actual hours worked, and setting forth his hourly rate of pay, regular wage, and/or overtime wages.

362. Upon information and belief, the failure to provide an accurate accounting was done purposefully in order to disguise the actual number of hours Plaintiffs and putative Class Members worked in order to avoid paying employees for their full hours worked and any overtime due.

363. Each Defendant willfully disregarded and purposefully evaded record keeping requirements of the New York Labor Law by failing to maintain accurate and complete payroll records.

364. Each Defendant willfully and knowingly violated Plaintiff and putative Class Members' right by making unlawful deductions from Plaintiffs' paychecks such that they were taking kickbacks for allowing Plaintiffs to work.

365. Due to the Defendants' New York Labor Law violations, each Plaintiff and putative Class Members are entitled to recover from Defendants all unpaid wages, overtime, spread of hours,

liquidated damages, premiums, interest, attorney's fees, costs, and disbursements of this action, pursuant to the New York Labor Law and implementing regulations.

### 9.3. **Violations of the New York State Wage Theft Prevention Act**

366.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

367.    The New York State Wage Theft Prevention Act requires every employer to notify its employees in writing of the employee's rate of pay and regular pay day, among other things.

368.    The New York State Wage Theft Prevention Act requires every employer to notify its employees, in writing, with every payment of wages, of the dates of work covered, the rate of pay and basis thereof, hours worked, gross wages, deductions, allowances, and net wages.

369.    Plaintiffs and putative Rule 23 class members were not provided with a wage notice, or weekly statements as required by law.

370.    In violation of the Wage Theft Protection Act—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiffs and putative Rule 23 Class members at the beginning of their employment with Defendants.

371.    Defendants further violated the WTPA by failing to provide Plaintiffs and putative Rule 23 Class members with accurate wage statements, which the WTPA requires

372.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature.

373.    Defendants' failure harmed Plaintiffs and putative Class members. Defendants' failure to provide wage notices and paystubs listing the proper rates of pay and wages actually earned, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate each Plaintiff's and Class

members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

374.     Had the wage statements Defendants provided to each Plaintiff and Class members accurately listed the total wages that each Plaintiff and Class members earned, as opposed to what they received, Defendants would have had to either (a) increase the latter to correspond to the with the former or (b) forthrightly acknowledge, by way of the wage statement, that the wages received did not correspond to the wages that each Plaintiff and Class members earned. Either possibility would have allowed each Plaintiff and Class members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

375.     The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to each Plaintiff and Class Members. This delayed payment caused each Plaintiff and Class Members to struggle to pay bills and other debts.

376.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL.

377.     Each Defendant failed to comply with the notice and record keeping requirements of the New York State Wage Theft Prevention Act and as such are liable for civil penalties, attorney fees, and costs.

9.4. **Fair Labor Standards Act - Retaliation**

378.     Plaintiffs and those similarly situated repeat and incorporate all foregoing paragraphs as if fully set forth herein.

379.     Plaintiffs and those similarly situated sought to enforce their rights under the FLSA.

380.    Plaintiffs and those similarly situated engaged in protected activity under 29 USC §
215(a)(3).

381.    In response to Plaintiffs and those similarly situated engaging in protected conduct
under the FLSA, Plaintiffs and those similarly situated suffered retaliation by one or more Defendants.

382.    A reasonable employee would have found each retaliatory act described herein to be
materially adverse. Each retaliatory act alleged herein could dissuade a reasonable employee from
making or supporting a complaint about wage and hour violations.

383.    Each Defendant retaliated against Plaintiffs and those similarly situated, as alleged
herein, to harass and intimidate and to otherwise interfere with attempts to protect rights under the
FLSA.

384.    By engaging in the retaliatory acts alleged herein, each Defendant retaliated against,
discriminated against, and penalized each Plaintiff and those similarly situated in violation of the
FLSA, 29 USC § 215(a)(3).

385.    Plaintiffs and those similarly situated suffered damages, including, but not limited to
emotional distress damages and lost wages as a result of each Defendant's retaliation.

386.    Each Defendant subjected Plaintiffs and those similarly situated to retaliation that
altered the terms and conditions of employment.

387.    Plaintiffs and those similarly situated are entitled to equitable relief, monetary relief
including but not limited to compensatory and other damages, reasonable attorneys' fees and costs,
punitive damages and other appropriate relief.

### 9.5. **New York Labor Law - Retaliation**

388.    Plaintiffs and those similarly situated repeat and incorporate all foregoing paragraphs
as if fully set forth herein.

389.    Each Defendant willfully violated NYLL § 215, which states, "no employer or his agent... shall discharge, penalize or in any other manner discriminate against any employee because such employee has ... caused to be instituted a proceeding."

390.    Plaintiffs and those similarly situated attempted to enforce their rights under the NYLL.

391.    Plaintiffs' actions and the actions of those similarly situated are protected activity under NYLL § 215.

392.    In response to Plaintiffs and those similarly situated engaging in protected conduct under the NYLL, each Defendant retaliated against them.

393.    A reasonable employee would have found each retaliatory act described herein to be materially adverse. Each retaliatory act alleged herein could dissuade a reasonable employee from making or supporting a complaint about wage and hour violations.

394.    Each Defendant retaliated against Plaintiffs and those similarly situated, as alleged herein, to harass and intimidate and to otherwise interfere with attempts to vindicate rights under the NYLL.

395.    By engaging in the retaliatory acts alleged herein, each Defendant retaliated against, discriminated against, and penalized each Plaintiff and those similarly situated in violation of NYLL § 215.

396.    Plaintiffs and those similarly situated have suffered damages, including, but not limited to emotional distress damages and lost wages as a result of each Defendant's retaliation.

397.    Each Defendant subjected Plaintiffs and those similarly situated to such retaliation that altered the terms and conditions of employment.

398.    Notice of this claim has been served upon the Attorney General pursuant to NYLL § 215(2).

399.    Plaintiffs and those similarly situated are entitled to equitable relief, monetary relief including but not limited to compensatory and other damages, reasonable attorneys' fees and costs, punitive damages and other appropriate relief.

### 9.6. **Construction Industry Fair Play Act - Misclassification**

400.    Plaintiffs and those similarly situated repeat and incorporate all foregoing paragraphs as if fully set forth herein.

401.    Each Defendant willfully violated NYLL § 861-E, which states, "Any contractor who willfully fails to properly classify an individual as an employee as provided under section eight hundred sixty-one-c of this article shall be subject to the civil and criminal penalties provided under this section."

402.    Defendants willfully misclassified Plaintiffs and those similarly situated as independent contractors.

403.    Plaintiffs and those similarly situated are entitled to relief pursuant to NYLL § 861-E, of up to twenty-five hundred dollars for the first violation per misclassified employee and to a civil penalty of up to five thousand dollars for each subsequent violation per misclassified employee within a five-year period.

### 9.7. **New York Labor Law- Construction Industry Wage Theft**

404.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

405.    At all relevant times, Plaintiffs and each Class Member were employed by Defendants within the meaning of the New York Labor Law §§ 2, 650, and 651 et seq. and the supporting New York State Department of Labor Regulations.

406.    Each Defendant knowingly and willfully violated each Plaintiff's and each putative Class Member's rights by failing to pay all lawful wages for all hours worked.

407. CE SOLUTIONS GROUP, LLC was the prime contractor for all jobs worked by Plaintiffs and those similarly situated.

408. Corporate Defendants served as subcontractors for CE SOLUTIONS GROUP, LLC.

409. Due to the Defendants' New York Labor Law violations, each Plaintiff and Class Members are entitled to recover from CE SOLUTIONS GROUP, LLC all unpaid wages, overtime, spread of hours, liquidated damages, premiums, interest, attorney's fees, costs, and disbursements of this action, pursuant to the New York Labor Law and implementing regulations.

### 9.8. <u>Violation of N.Y.C. Admin. Code § 20-929 "Freelance Isn't Free Act"</u>

410. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth at length herein.

411. Defendants breached Agreements between the parties by failing to pay for each Plaintiffs' services as reflected in Plaintiffs' outstanding invoices.

412. Defendants engaged in unlawful payment practices within the meaning of N.Y.C. Admin. Code § 20-929 by failing to pay the agreed upon amount for Plaintiffs' services in connection with the Agreement.

413. As a result of the foregoing, Plaintiffs are entitled to damages in an amount to be proved at trial, but no less than the amounts invoiced.

414. As a further result of the foregoing, Plaintiffs are entitled to statutory damages equal to double the amount of their damages resulting from Defendants' nonpayment.

### 9.9. <u>Unjust Enrichment under the Common Law</u>

415. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth at length herein.

416.    Defendant Corporations and Individuals were unjustly enriched due to their deceptive scheme to avoid paying wages and overtime premiums due and owing to Plaintiffs and those similarly situated, as alleged above.

417.    Defendants were unjustly enriched due to being able to retain monies rightfully due to Plaintiffs and those similarly situated as wages, as alleged above.

418.    Allowing Defendants to retain monies offends equity and good conscience as the monies were properly earned by the Plaintiffs and those similarly situated.

419.    As a result of the foregoing, Defendants are required to return unjustly retained funds due to Plaintiffs and those similarly situated in an amount to be proved at trial.

## 10. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated persons, respectfully requests that the Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    Designation of named Plaintiffs as Representatives of the putative FLSA Collective Plaintiffs;

d.    Designation of this action as a class action pursuant to F.R.C.P. 23;

e.    Designation of named Plaintiffs as Representatives of the Class; and

f.    An award of unpaid wages, overtime, and spread of hours due under the FLSA and NYLL;

g.   An award of liquidated damages as a result of each Defendant's failure to pay minimum wages and overtime compensation, pursuant to 29 U.S.C. § 216;

h.   An award of civil penalties pursuant to the New York State Wage Theft Prevention Act;

i.   An award of civil penalties pursuant to NYLL 861-E;

j.   An award of civil penalties pursuant to the N.Y.C. Admin. Code § 20-929;

k.   An award of equitable damages;

l.   An award of prejudgment and post-judgment interest;

m.   An award of costs and expenses associated with this action, together with reasonable attorneys' and expert fees; and

n.   Such other and further relief as this Court determines to be just and proper.

## 11. __JURY TRIAL DEMAND__

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Dated: Queens, NY
September 26, 2024

SACCO & FILLAS LLP

Geoffrey Kalender, Esq.
Clifford Tucker, Esq.
31-19 Newtown Ave,
Seventh Floor
Astoria, NY 11102
Tel: 718-269-1627
Fax: 718-559-6517
gkalender@saccofillas.com
CTucker@SaccoFillas.com
*Attorneys for Plaintiff*

**NOTICE OF INTENTION TO ENFORCE SHAREHOLDER**

**LIABILITY FOR SERVICES RENDERED**

TO: CE SOLUTIONS GROUP, LLC, NYC 2WAY INTERNATIONAL LTD, UNIQUE TRANS CORP., A&M TRANSPORT TRANSPORT INC, BEKRUZJON INC., BEKRUZJON CORP

PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that Plaintiffs and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of CE SOLUTIONS GROUP, LLC, NYC 2WAY INTERNATIONAL LTD, UNIQUE TRANS CORP., A&M TRANSPORT TRANSPORT INC, BEKRUZJON INC., BEKRUZJON CORP  for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them for the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

Dated: Queens, NY
       September 26, 2024

                        Geoffrey Kalender, Esq.
                        Clifford Tucker, Esq.
                        31-19 Newtown Ave,
                        Seventh Floor
                        Astoria, NY 11102
                        Tel: 718-269-1627
                        Fax: 718-559-6517
                        gkalender@saccofillas.com
                        CTucker@SaccoFillas.com
                        *Attorneys for Plaintiff*

**DEMAND BY EMPLOYEE TO INSPECT SHARE RECORDS AND MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE BUSINESS CORPORATION LAW**

TO: CE SOLUTIONS GROUP, LLC, NYC 2WAY INTERNATIONAL LTD, UNIQUE TRANS CORP., A&M TRANSPORT TRANSPORT INC, BEKRUZJON INC., BEKRUZJON CORP

PLEASE TAKE NOTICE, that Plaintiffs and others similarly situated as employees of the above corporations who intend to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to them as laborers, servants and/or employees of the above corporations for services performed by them for the above corporations within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporations, and who have expressly authorized the undersigned, as their attorney, to make this demand on their behalf,

HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and records of shareholders of the above corporations and to make extracts therefrom on or after five (5) days from receipt of this notice.

Dated: Queens, NY
September 26, 2024

_____
Geoffrey Kalender, Esq.
Clifford Tucker, Esq.
31-19 Newtown Ave,
Seventh Floor
Astoria, NY 11102
Tel: 718-269-1627
Fax: 718-559-6517
gkalender@saccofillas.com
CTucker@SaccoFillas.com
*Attorneys for Plaintiff*

## CONSENT TO JOIN ACTION

## REQUEST TO BECOME A PARTY-PLAINTIFF

I hereby consent to be a party plaintiff in an action to recover unpaid wages, including but not limited to minimum wages, overtime, spread of hours, gratuities, statutory and liquidated damages, attorney's fees, costs, interest, and other sums owing to me and other similarly situated employees under the federal Fair Labor Standards Act, New York Labor Law, and implementing regulations and wage orders.

I hereby authorize Sacco & Fillas LLP to pursue any claims I may have, including such litigation as may be necessary, and I hereby consent, agree, and option to become a plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.

Por la presente doy mi consentimiento para ser parte demandante en una acción para recuperar salarios impagos, incluidos, entre otros, salarios mínimos, horas extras, distribución de horas, gratificaciones, daños legales y liquidados, honorarios de abogados, costos, intereses y otras sumas que se me deben. y otros empleados en situaciones similares bajo la Ley Federal de Normas Laborales Justas, la Ley Laboral de Nueva York y las regulaciones de implementación y órdenes salariales.

Por la presente autorizo a Sacco & Fillas LLP a presentar cualquier reclamo que pueda tener, incluido el litigio que pueda ser necesario, y por la presente doy mi consentimiento, acepto y tengo la opción de convertirme en demandante en este documento y quedar obligado por cualquier acuerdo de esta acción o adjudicación por La corte.

Name / Nombre: _X Akaki Batskhrikidze_

Legal Representative:
Sacco & Fillas LLP
3119 Newtown Ave, Seventh Floor
Astoria, NY 11102

Signature/ Firma: _X_____    Date/ Fecha: _X 03/98/2024_

## CONSENT TO JOIN ACTION

### REQUEST TO BECOME A PARTY-PLAINTIFF

I hereby consent to be a party plaintiff in an action to recover unpaid wages, including but not limited to minimum wages, overtime, spread of hours, gratuities, statutory and liquidated damages, attorney's fees, costs, interest, and other sums owing to me and other similarly situated employees under the federal Fair Labor Standards Act, New York Labor Law, and implementing regulations and wage orders.

I hereby authorize Sacco & Fillas LLP to pursue any claims I may have, including such litigation as may be necessary, and I hereby consent, agree, and option to become a plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.

Translation / თარგმანი:

მე თანახმა ვარ ვიყო მხარე მოსარჩელე გადაუხდელი ხელფასის აღდგენის სარჩელში, მათ შორის, მაგრამ არ შემოიფარგლება მინიმალური ხელფასით, ზეგანაკვეთური სამუშაოებით, საათების განაწილებით, ანაზღაურებით, კანონით დადგენილი და ლიკვიდაციით ანაზღაურებით, ადვოკატის საფასურით, ხარჯებით, პროცენტებით და სხვა თანხებით. მე და სხვა მსგავს მდგომარეობაში მყოფი თანამშრომლები ფედერალური შრომის სამართლიანი სტანდარტების კანონის, ნიუ-იორკის შრომის კანონისა და რეგულაციებისა და სახელფასო ბრძანებების განხორციელების შესაბამისად.

მე ვაძლევ უფლებას Sacco & Fillas LLP-ს განახორციელოს ნებისმიერი პრეტენზია, რომელიც შეიძლება მქონდეს, მათ შორის ისეთი სასამართლო დავის ჩათვლით, რომელიც შეიძლება იყოს საჭირო, და მე ვეთანხმები, ვეთანხმები და არჩევანს გავზდე მოსარჩელე აქ და ვიყო ვალდებული ამ ქმედების ნებისმიერი მოგვარებით ან განჩინებით. სასამართლო.

Name/ სახელი: _ALEKSANDRE CHINCHALADZE_

Legal Representative:
Sacco & Fillas LLP
3119 Newtown Ave, Seventh Floor
Astoria, NY 11102

Signature/ ხელმოწერა: _____ Date/ თარიღი: 4/12/2024

**CONSENT TO JOIN ACTION**

**REQUEST TO BECOME A PARTY-PLAINTIFF**

I hereby consent to be a party plaintiff in an action to recover unpaid wages, including but not limited to minimum wages, overtime, spread of hours, gratuities, statutory and liquidated damages, attorney's fees, costs, interest, and other sums owing to me and other similarly situated employees under the federal Fair Labor Standards Act, New York Labor Law, and implementing regulations and wage orders.

I hereby authorize Sacco & Fillas LLP to pursue any claims I may have, including such litigation as may be necessary, and I hereby consent, agree, and option to become a plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.

Translation / თარგმანი

მე თანახმა ვარ ვიყო მხარე მოსარჩელე გადაუხდელი ხელფასის აღდგენის სარჩელში, მათ შორის, მაგრამ არ შემოიფარგლება მინიმალური ხელფასით, ზეგანაკვეთური სამუშაოებით, საათების განაწილებით, ანაზღაურებით, კანონით დადგენილი და ლიკვიდაციით ზარალის ანაზღაურებით, ადვოკატის საფასურით, ხარჯებით, პროცენტებით და სხვა თანხებით. და სხვა ანალოგიურად მდებარე თანამშრომლები ფედერალური შრომის სამართლიანი სტანდარტების კანონის, ნიუ-იორკის შრომის კანონისა და რეგულაციებისა და სახელფასო ბრძანებების განხორციელების შესაბამისად.

მე ვალდევ უფლებას Sacco & Fillas LLP-ს განახორციელოს ნებისმიერი პრეტენზია, რომელიც შეიძლება მქონდეს, მათ შორის ისეთი სასამართლო დავის ჩათვლით, რომელიც შეიძლება იყოს საჭირო, და მე ვეთანხმები, ვეთანხმები და ვარ არჩევანს, რომ გავხდე მოსარჩელე აქ და ვიყო ვალდებული ამ ქმედების ნებისმიერი მოგვარებით ან განჩინებით. სასამართლო.

Name/ სახელი: ___Sergo_____

Legal Representative:
Sacco & Fillas LLP
3119 Newtown Ave, Seventh Floor
Astoria, NY 11102

Signature/ ხელმოწერა: ___S.W_____
Sergo (Aug 22, 2024 13:40 EDT)

Date/ თარიღი: ___Aug 22, 2024___

## CONSENT TO JOIN ACTION

## REQUEST TO BECOME A PARTY-PLAINTIFF

I hereby consent to be a party plaintiff in an action to recover unpaid wages, including but not limited to minimum wages, overtime, spread of hours, gratuities, statutory and liquidated damages, attorney's fees, costs, interest, and other sums owing to me and other similarly situated employees under the federal Fair Labor Standards Act, New York Labor Law, and implementing regulations and wage orders.

I hereby authorize Sacco & Fillas LLP to pursue any claims I may have, including such litigation as may be necessary, and I hereby consent, agree, and option to become a plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.

Translation / თარგმანი

მე თანახმა ვარ ვიყო მხარე მოსარჩელე გადაუხდელი ხელფასის აღდგენის სარჩელში, მათ შორის, მაგრამ არ შემოიფარგლება მინიმალური ხელფასით, ზეგანაკვეთური სამუშაოებით, საათების განაწილებით, ანაზღაურებით, კანონით დადგენილი და ლიკვიდაციით ზარალის ანაზღაურებით, ადვოკატის საფასურით, ხარჯებით, პროცენტებით და სხვა თანხებით. და სხვა ანალოგიურად მდებარე თანამშრომლები ფედერალური შრომის სამართლიანი სტანდარტების კანონის, ნიუ-იორკის შრომის კანონისა და რეგულაციებისა და სახელმწიფო ბრძანებების განხორციელების შესაბამისად.

მე ვალდებ უფლებას Sacco & Fillas LLP-ს განახორციელოს ნებისმიერი პრეტენზია, რომელიც შეიძლება მქონდეს, მათ შორის ისეთი სასამართლო დავის ჩათვლით, რომელიც შეიძლება იყოს საჭირო, და მე ვეთანხმები, ვეთანხმები და ვარ არჩევანს, რომ გავხდე მოსარჩელე აქ და ვიყო ვალდებული ამ ქმედების ნებისმიერი მოგვარებით ან განჩინებით. სასამართლო.

Name/ სახელი: _____Giorgi Gigatadze_____

Legal Representative:
Sacco & Fillas LLP
3119 Newtown Ave, Seventh Floor
Astoria, NY 11102

Signature/ ხელმოწერა: _G. Gigatadze_    Date/ თარიღი: ___20/08/24___
Giorgi Gigatadze (Aug 20, 2024 16:22 EDT)

**CONSENT TO JOIN ACTION**

**REQUEST TO BECOME A PARTY-PLAINTIFF**

I hereby consent to be a party plaintiff in an action to recover unpaid wages, including but not limited to minimum wages, overtime, spread of hours, gratuities, statutory and liquidated damages, attorney's fees, costs, interest, and other sums owing to me and other similarly situated employees under the federal Fair Labor Standards Act, New York Labor Law, and implementing regulations and wage orders.

I hereby authorize Sacco & Fillas LLP to pursue any claims I may have, including such litigation as may be necessary, and I hereby consent, agree, and option to become a plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.

Translation / თარგმანი

მე თანახმა ვარ ვიყო მხარე მოსარჩელე გადაუხდელი ხელფასის აღდგენის სარჩელში, მათ შორის, მაგრამ არ შემოიფარგლება მინიმალური ხელფასით, ზეგანაკვეთური სამუშაოთი, საათების განაწილებით, ანაზღაურებით, კანონით დადგენილი და ლიკვიდაციით ზარალის ანაზღაურებით, ადვოკატის საფასურით, ხარჯებით, პროცენტებით და სხვა თანხებით. და სხვა ანალოგიურად მდებარე თანამშრომლები ფედერალური შრომის სამართლიანი სტანდარტების კანონის, ნიუ-იორკის შრომის კანონისა და რეგულაციებისა და სახელფასო ბრძანებების განხორციელების შესაბამისად.

მე ვალდევ უფლებას Sacco & Fillas LLP-ს განახორციელოს ნებისმიერი პრეტენზია, რომელიც შეიძლება მქონდეს, მათ შორის ისეთი სასამართლო დავის ჩათვლით, რომელიც შეიძლება იყოს საჭირო, და მე ვეთანხმები, ვეთანხმები და ვარ არჩევანს, რომ გავხდე მოსარჩელე აქ და ვიყო ვალდებული ამ ქმედების ნებისმიერი მოგვარებით ან განჩინებით. სასამართლო.

Name/ სახელი: **goga**

Legal Representative:
Sacco & Fillas LLP
3119 Newtown Ave, Seventh Floor
Astoria, NY 11102

Signature/ ხელმოწერა: _goga (Aug 21, 2024 11:45 EDT)_        Date/ თარიღი: **Aug 21, 2024**

## CONSENT TO JOIN ACTION

### REQUEST TO BECOME A PARTY-PLAINTIFF

I hereby consent to be a party plaintiff in an action to recover unpaid wages, including but not limited to minimum wages, overtime, spread of hours, gratuities, statutory and liquidated damages, attorney's fees, costs, interest, and other sums owing to me and other similarly situated employees under the federal Fair Labor Standards Act, New York Labor Law, and implementing regulations and wage orders.

I hereby authorize Sacco & Fillas LLP to pursue any claims I may have, including such litigation as may be necessary, and I hereby consent, agree, and option to become a plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.

Translation / თარგმანი

მე თანახმა ვარ ვიყო მხარე მოსარჩელე გადაუხდელი ხელფასის აღდგენის სარჩელში, მათ შორის, მაგრამ არ შემოიფარგლება მინიმალური ხელფასით, ზეგანაკვეთური სამუშაოთი, საათების განაწილებით, ანაზღაურებით, კანონით დადგენილი და ლიკვიდადაციით ზარალის ანაზღაურებით, ადვოკატის საფასურით, ხარჯებით, პროცენტებით და სხვა თანხებით. და სხვა ანალოგიურად მდებარე თანამშრომლები ფედერალური შრომის სამართლიანი სტანდარტების კანონის, ნიუ-იორკის შრომის კანონისა და რეგულაციებისა და სახელმწიფო ბრძანებების განხორციელების შესაბამისად.

მე ვალდევ უფლებას Sacco & Fillas LLP-ს განახორციელოს ნებისმიერი პრეტენზია, რომელიც შეიძლება მქონდეს, მათ შორის ისეთი სასამართლო დავის ჩათვლით, რომელიც შეიძლება იყოს საჭირო, და მე ვეთანხმები, ვეთანხმები და ვარ არჩევანს, რომ გავხდე მოსარჩელე აქ და ვიყო ვალდებული ამ ქმედების ნებისმიერი მოგვარებით ან განჩინებით. სასამართლო.

Name/ სახელი: _Giorgi_____

Legal Representative:
Sacco & Fillas LLP
3119 Newtown Ave, Seventh Floor
Astoria, NY 11102

Signature/ ხელმოწერა: _Giorgi (Aug 21, 2024 11:25 EDT)_    Date/ თარიღი: _Aug 21, 2024_

## <u>CONSENT TO JOIN ACTION</u>

### <u>REQUEST TO BECOME A PARTY-PLAINTIFF</u>

I hereby consent to be a party plaintiff in an action to recover unpaid wages, including but not limited to minimum wages, overtime, spread of hours, gratuities, statutory and liquidated damages, attorney's fees, costs, interest, and other sums owing to me and other similarly situated employees under the federal Fair Labor Standards Act, New York Labor Law, and implementing regulations and wage orders.

I hereby authorize Sacco & Fillas LLP to pursue any claims I may have, including such litigation as may be necessary, and I hereby consent, agree, and option to become a plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.

Translation / თარგმანი:

მე თანახმა ვარ ვიყო მხარე მოსარჩელე გადაუხდელი ხელფასის აღდგენის სარჩელში, მათ შორის, მაგრამ არ შემოიფარგლება მინიმალური ხელფასით, ზეგანაკვეთური სამუშაოებით, საათების განაწილებით, ანაზღაურებით, კანონით დადგენილი და ლიკვიდაციიით ზარალის ანაზღაურებით, ადვოკატის საფასურით, ხარჯებით, პროცენტებით და სხვა თანხებით. და სხვა ანალოგიურად მდებარე თანამშრომლები ფედერალური შრომის სამართლიანი სტანდარტების კანონის, ნიუ-იორკის შრომის კანონისა და რეგულაციებისა და სახელფასო ბრძანებების განხორციელების შესაბამისად.

მე ვალდევ უფლებას Sacco & Fillas LLP-ს განახორციელოს ნებისმიერი პრეტენზია, რომელიც შეიძლება მქონდეს, მათ შორის ისეთი სასამართლო დავის ჩათვლით, რომელიც შეიძლება იყოს საჭირო, და მე ვეთანხმები, ვეთანხმები და ვარ არჩევანს, რომ გავხდე მოსარჩელე აქ და ვიყო ვალდებული ამ ქმედების ნებისმიერი მოგვარებით ან განხრინვით. სასამართლო.

Name/ სახელი: Giorgi Lipartia

Legal Representative:
Sacco & Fillas LLP
3119 Newtown Ave, Seventh Floor
Astoria, NY 11102

Signature/ Подпись: _Giorgi Lipartia (Apr 25, 2024 15:32 EDT)_    Date/ Дата: <u>April 25, 2024</u>

## CONSENT TO JOIN ACTION

## REQUEST TO BECOME A PARTY-PLAINTIFF

I hereby consent to be a party plaintiff in an action to recover unpaid wages, including but not limited to minimum wages, overtime, spread of hours, gratuities, statutory and liquidated damages, attorney's fees, costs, interest, and other sums owing to me and other similarly situated employees under the federal Fair Labor Standards Act, New York Labor Law, and implementing regulations and wage orders.

I hereby authorize Sacco & Fillas LLP to pursue any claims I may have, including such litigation as may be necessary, and I hereby consent, agree, and option to become a plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.

Por la presente doy mi consentimiento para ser parte demandante en una acción para recuperar salarios impagos, incluidos, entre otros, salarios mínimos, horas extras, distribución de horas, gratificaciones, daños legales y liquidados, honorarios de abogados, costos, intereses y otras sumas que se me deben. y otros empleados en situaciones similares bajo la Ley Federal de Normas Laborales Justas, la Ley Laboral de Nueva York y las regulaciones de implementación y órdenes salariales.

Por la presente autorizo a Sacco & Fillas LLP a presentar cualquier reclamo que pueda tener, incluido el litigio que pueda ser necesario, y por la presente doy mi consentimiento, acepto y tengo la opción de convertirme en demandante en este documento y quedar obligado por cualquier acuerdo de esta acción o adjudicación por La corte.

Name / Nombre: _X Tamaz Sabauri_

Legal Representative:
Sacco & Fillas LLP
3119 Newtown Ave, Seventh Floor
Astoria, NY 11102

Signature/ Firma: X T. _____        Date/ Fecha: X 03. 28. 24

## CONSENT TO JOIN ACTION

### REQUEST TO BECOME A PARTY-PLAINTIFF

I hereby consent to be a party plaintiff in an action to recover unpaid wages, including but not limited to minimum wages, overtime, spread of hours, gratuities, statutory and liquidated damages, attorney's fees, costs, interest, and other sums owing to me and other similarly situated employees under the federal Fair Labor Standards Act, New York Labor Law, and implementing regulations and wage orders.

I hereby authorize Sacco & Fillas LLP to pursue any claims I may have, including such litigation as may be necessary, and I hereby consent, agree, and option to become a plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.

Translation / თარგმანი:

მე თანახმა ვარ ვიყო მხარე მოსარჩელე გადაუხდელი ხელფასის აღდგენის სარჩელში, მათ შორის, მაგრამ არ შემოიფარგლება მინიმალური ხელფასით, ზეგანაკვეთური სამუშაოებით, საათების განაწილებით, ანაზღაურებით, კანონით დადგენილი და ლიკვიდაციით ზარალის ანაზღაურებით, ადვოკატის საფასურით, ხარჯებით, პროცენტებით და სხვა თანხებით. და სხვა ანალოგიურად მდებარე თანამშრომლები ფედერალური შრომის სამართლიანი სტანდარტების კანონის, ნიუ-იორკის შრომის კანონისა და რეგულაციებისა და სახელფასო ბრძანებების განხორციელების შესაბამისად.

მე ვალდევ უფლებას Sacco & Fillas LLP-ს განახორციელოს ნებისმიერი პრეტენზია, რომელიც შეიძლება მქონდეს, მათ შორის ისეთი სასამართლო დავის ჩათვლით, რომელიც შეიძლება იყოს საჭირო, და მე ვეთანხმები, ვეთანხმები და ვარ არჩევანს, რომ გავხდე მოსარჩელე აქ და ვიყო ვალდებული ამ ქმედების ნებისმიერი მოგვარებით ან განჩინებით. სასამართლო.

Name/ სახელი: <u>Besik Tsikhelishvili</u>

Legal Representative:
Sacco & Fillas LLP
3119 Newtown Ave, Seventh Floor
Astoria, NY 11102

Signature/ Подпись: <u>Besik (Apr 25, 2024 14:54 EDT)</u>    Date/ Дата: <u>April 25, 2024</u>

## CONSENT TO JOIN ACTION

## REQUEST TO BECOME A PARTY-PLAINTIFF

I hereby consent to be a party plaintiff in an action to recover unpaid wages, including but not limited to minimum wages, overtime, spread of hours, gratuities, statutory and liquidated damages, attorney's fees, costs, interest, and other sums owing to me and other similarly situated employees under the federal Fair Labor Standards Act, New York Labor Law, and implementing regulations and wage orders.

I hereby authorize Sacco & Fillas LLP to pursue any claims I may have, including such litigation as may be necessary, and I hereby consent, agree, and option to become a plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.

Por la presente doy mi consentimiento para ser parte demandante en una acción para recuperar salarios impagos, incluidos, entre otros, salarios mínimos, horas extras, distribución de horas, gratificaciones, daños legales y liquidadas, honorarios de abogados, costos, intereses y otras sumas que se me deben. y otros empleados en situaciones similares bajo la Ley Federal de Normas Laborales Justas, la Ley Laboral de Nueva York y las regulaciones de implementación y órdenes salariales.

Por la presente autorizo a Sacco & Fillas LLP a presentar cualquier reclamo que pueda tener, incluido el litigio que pueda ser necesario, y por la presente doy mi consentimiento, acepto y tengo la opción de convertirme en demandante en este documento y quedar obligado por cualquier acuerdo de esta acción o adjudicación por La corte.

Name / Nombre: X Zviadi Khaduri

Legal Representative:
Sacco & Fillas LLP
3119 Newtown Ave, Seventh Floor
Astoria, NY 11102

Signature/ Firma: X 8. 6          Date/ Fecha: X 3.28.24